SUMTER et al. v. HUMBLE OIL & REFINING CO.
No. 3648.

Court of Civil Appeals of Texas. Beaumont.
April 18, 1940.

Rehearing Denied May 1, 1940.

**624**

J. R. Beck and J. R. McDougald, both of Beaumont, for appellants.

R. E. Seagler and K. W. Gilmore, both of Houston, for appellee.

WALKER, Chief Justice.

This appeal was prosecuted by appellants, M. D. Sumter et al., plaintiffs below, from the judgment of the 58th district court of Jefferson county, sustaining the plea in abatement filed by appellee, Humble Oil & Refining Company, defendant below, against their petition. The parties were the same, and in the same capacity, as in cause No. 51236 on the docket of the 58th district court of Jefferson county, wherein judgment was rendered sustaining appellee's general demurrer against appellants' petition. The judgment in the case at bar sustaining the plea in abatement recites: "After hearing said amended plea in abatement and the evidence introduced thereon, all of which was a matter of record and proceedings previously had in this Court, and counsel having stated in open court that the matters raised by the plea in abatement was uncontradicted and all a matter of record, and the Court being of the opinion that all matters raised by the plea were proceedings pre-

viously had in Cause No. 51236 in this court, and the Court having taken judicial knowledge of all such proceedings in addition to same being introduced in evidence, finds that as a matter of law the matters and things raised in this case have been previously adjudicated in said Cause No. 51236 and that said plea should and is in all things sustained and said cause abated and dismissed."

Since the judgment was rendered on the "record and proceedings held," being the record in cause No. 51236, for statement and nature of the cause of action we quote as follows from appellee's brief:

"Appellants were plaintiffs in the trial court in both causes of action, and appellee was defendant in the trial court in both causes of action, and, for convenience and brevity and clearness, at times they may be referred to as such in this brief.

"Plaintiffs first filed suit against this defendant in the Fifty-Eighth Judicial District Court of Jefferson County in Cause No. 51236, and the pleadings and actions taken in said cause will be briefly enumerated and set out here as follows:

"(1) Plaintiffs' original petition filed September 28, 1937, represented by attorneys chosen and selected by them, alleged that the Linscoms were the owners of Lot 36, Block 'B' and the Sumters were the owners of Lots 17, 18 and 19, Block 'E'; that the defendant Humble Company, on or about May 23, 1937, owned, as assignee, oil, gas and mineral lease on Lots 35 to 38, inclusive, of Block 'B' and Lots 14, 15, 17, 18 and 19, Block 'E'; that plaintiffs Linscom are the original lessors in the original lease on Lot 36, and plaintiffs Sumter are the original lessors in two leases on Lots 17 and 18, and further alleged the ownership of the balance of the lots and the leases comprising approximately 10 acres and also comprising the property covered by the pooling agreement hereinafter mentioned.

"Plaintiffs further alleged the rule promulgated by the Railroad Commission authorizing the drilling of an oil well on not less than 5 acres and alleged the execution of the pooling agreement between plaintiffs and other lot owners and the defendant, and sued for an additional consideration which they alleged was promised by the defendant, and also further alleged that without the lot owned by one W. C. Couch, the defendant had elected to declare the pooling agreement complete, and,

in the alternative, plaintiffs asked that they be paid under the pooling agreement an additional royalty which would result by leaving out the lot owned by W. C. Couch, specifically relying upon and declaring upon the pooling agreement.

"In this petition plaintiffs further declared upon and relied upon the lease which they alleged was owned ·by the defendant, in asking damages for the violation of the terms of the ·lease by the defendant drilling a well nearer than 200 feet of the residence.

"(2) Defendant filed its original answer on November 1, 1937, consisting of general demurrer, special exceptions and special answer, and attached the pooling agreement as an exhibit to such answer.

"(3) On January 27, 1938, plaintiffs filed their first amended original petition, again alleging the ownership of the lots as in their original petition, and containing Paragraph (3) as follows:

" 'That the defendant, Humble Company, at and during all the time hereinafter mentioned, owned and held either as original lessee or assignee, oil and gas leases on Lots ·Nos. 35, 36, 37 and 38, of Block "B" and Lots 14, 15, 17, 18 and 19 of Block "E" and. the Gulf Oil Corporation owned oil and gas leases on Lots 33 and 34 of Block "B," and Lot 16 of Block "E." '

"Plaintiff further alleged the execution of the pooling agreement by all lot owners except W. C. Couch, and further alleged that · the defendant promised to pay plaintiffs as much for the execution of such agreement as it paid any other lot owner, and alleged that they were informed and believed that the defendant had paid the said W. C. Couch $4000 and that, therefore, the defendant owed them, the plaintiffs, $4-000 each. Plaintiffs again declared upon the terms and provisions of the lease and sued the defendant for damages for violation of such terms in drilling a well nearer than 200 feet of the dwelling houses of the plaintiffs Sumter.

"(4) Defendant filed its first amended original answer containing general demurrer, special exception, and in Paragraph XII thereof specifically pleaded a written release executed by the plaintiff Sumter authorizing the drilling of a well nearer than 200 feet and releasing the defendant from any damages as a result thereof.

"(5) Plaintiffs then filed their second amended original petition on March. 21, 1938 again alleging the ownership of the lots in question and alleging that the Humble Company, during all the time herein mentioned, owned and held, either as original lessee or assignee, oil and gas leases on the lots in question, and in the last part of Paragraph (4) of said petition specifically declared upon and referred to the pooling agreement in the following language: 'That a copy of said pooling agreement is attached to this petition and marked Exhibit "A," and made a part hereof, and is specifically referred to for an understanding of its terms and provisions.', and again sued for the additional consideration which they alleged was promised as consideration of the pooling agreement.

"And in Paragraph (9) of such petition, plaintiffs again declared upon the terms and provisions of the lease which they said was in force and sued for damages for the violation of the term providing that no well be drilled nearer than 200 feet of a house or barn. Such pooling agreement, attached to said petition as Exhibit 'A' above referred to, is shown in Statement of Facts, pages 50-62.

"(6) Defendant filed its second amended original answer March 21, 1938, containing demurrer, various special exceptions and special answer, again pleading the written release for damages in drilling the well nearer than 200 feet of the buildings on said property and again attached the pooling agreement as an exhibit.

"(7) Plaintiffs then filed their first supplemental petition September 6, 1938, containing general demurrer and special exceptions, in reply to defendant's second amended original answer, and prayed for the recovery of $4000 each which they alleged they were informed the defendant had paid W. C. Couch.

"(8) Defendant filed its third amended original answer September 15, 1938, admitting the execution of the pooling agreement, as alleged in plaintiffs' petition, and alleged its performance of same, and further. pleaded the pooling agreements contained in the leases executed by plaintiffs which covered all the lots except one belonging to· plaintiffs Sumter and one belonging to plaintiffs Linscom, and again pleaded the release by plaintiffs Sumter of any damages caused by the drilling of a well nearer than 200 feet to their buildings.

"(9) Plaintiffs then, on the same day, September 15, · 1938, filed their motion to strike defendant's third amended original

answer, for the reason that on March 25, 1938, Judge George C. O'Brien, then judge of said court, had overruled such special exceptions and demurrers.

"(10) On the 15th day of September, 1938, Honorable W. S. Nichols, Special Judge presiding in the absence of Judge George C. O'Brien, entered an order to the effect that it was the opinion of such Special Judge that the Honorable George C. O'Brien would have the authority to change his rulings on said exceptions and that it was within the discretion of the court whether such exceptions should be considered or not, and overruled the motion to strike and sustained the defendant's general demurrer, whereupon plaintiffs refused to amend and elected to abide by their pleadings and gave notice of appeal to the Court of Civil Appeals for the Ninth Supreme Judicial District of Texas, at Beaumont, Texas.

"Although plaintiffs refused to amend and gave notice of appeal to the Court of Civil Appeals on the action of the court in sustaining the demurrer, no appeal was perfected within the time prescribed by law.

"(11) Thereafter, on November 12, 1938, through a second set of attorneys, plaintiffs filed their third amended original petition in said cause, and for the third time again alleged ·

" 'That the defendant Humble Company, at and during all the times herein mentioned, owned and held, either as original lessee, or assignee, oil and gas leases on Lots 35, 36, 37 and 38 of Block "B", above referred to, and Lots 14, 15, 17, 18 and 19 of Block "E" above referred to, and the Gulf Oil Corporation owned oil and gas leases on Lots 33 and 34 of Block "B" and Lot 16 of Block "E". '

"In this petition, plaintiffs again made the pooling agreement a part of their petition at the bottom of Paragraph (4), in the following language:

" 'That a copy of said pooling agreement is attached to this petition and marked Exhibit "A" and made a part hereof, and is specifically referred to for an understanding of its terms and provisions, except only for the omission from said writing of that part of the consideration hereinafter shown.'

"In this petition plaintiffs further alleged that the promises made by the defendants' agents were false and fraudulent and made for the purpose of inducing them to execute the contract, and that they did not intend to live up to the promises or carry out their agreements with reference to the payment of the additional consideration, and prayed for a reformation of the contract so as to include the consideration of $4000 which they alleged that the defendant had promised to pay.

"(12) Defendant filed its plea to the jurisdiction on December 19, 1938, alleging that this case had been finally terminated when defendant failed to appeal or failed to amend, after the order of the court sustaining the general demurrer, and dismissing the case.

"(13) On March 20, 1939, the same Fifty-Eighth Judicial District Court entered its order sustaining the plea to the jurisdiction.

"For the sake of brevity, the allegations contained in the various petitions filed by plaintiffs in said Cause No. 51236 have not been set out in detail but appellee invites the Court to read all of said pleadings and observe the similarity of same with plaintiffs' petition to this cause.

"(14) On July 11, 1939, plaintiffs, through a third set of attorneys, filed their original petition in Cause No. 54930 in the same Fifty-Eighth Judicial District Court of Jefferson County, Texas, alleging the ownership of the same property involved in Cause No. 51236, and after the judgment in Cause No. 51236, in which plaintiffs had alleged that the defendant was the owner of a lease on this property and had declared upon the pooling agreement, and defendant, by its general demurrer, had admitted all the material allegations in plaintiffs' petition to be true, and the judgment on the demurrer was in fact a finding that such allegations were true, then plaintiffs alleged in Cause No. 54930 for the first time that a prior lease on Lots 18 and 19, Block 'E' was a forgery, and for the first time alleged that the subsequent lease had been secured by fraud, and alleged that the pooling agreement which they had declared upon was secured by fraud, and the reason given for making the allegations was that the plaintiffs had no adequate remedy at law for securing what they contended was additional consideration.

"(15) Defendant filed a plea in abatement and an amended plea in abatement, and plaintiffs' attorneys agreed that in view of the fact that all the pleadings were had in the same court and all were a matter of

record, that if a plea in bar and a plea of estoppel, after the introduction of the record evidence, would be good as matter of law, then the same could be reached by a plea in abatement and have briefed the case upon this theory. The plea in abatement was sustained by the trial court by judgment entered on the 22nd day of September, 1939, after a jury had been waived to try the facts involved."

## Opinion.

■ By its general demurrer to appellants' petition in cause No. 51236, appellee admitted the truth of every fact alleged therein constituting an element of appellants' cause of action. Thus, appellee by its general demurrer admitted the execution and delivery of the leases, and every fact allegation made in the petition in relation to the proration agreement. Had appellants tried cause No. 51236 on its facts, their proof would have been limited to the allegations of the petition; they would have proved the pooling agreement as alleged, appellee's ownership of the oil and gas lease on the property described in the petition, and facts supporting the additional consideration which, on the allegations of the petition, was due them under the pooling agreement, and facts supporting the damages claimed by them in their petition, proximately resulting from the alleged breach of the terms of the oil and gas lease and of the pooling agreement. While no proof was offered in cause No. 51236, a general demurrer conceded to appellants all facts alleged; the judgment on the general demurrer was a conclusion of law on the facts that they did not constitute a cause of action. The judgment in cause No. 51236, sustaining the general demurrer, was res judicata against appellants of all issues made by their petition in that suit, and by reason of that judgment appellants are foreclosed from litigating any issue made in that suit, in a subsequent suit. Scherff v. M. P. Ry. Co., 81 Tex. 471, 17 S.W. 39, 26 Am.St.Rep. 828; Bomar v. Parker et al., 68 Tex. 435, 4 S.W. 599.

The judgment sustaining the general demurrer in cause No. 51236 was conclusive on appellants, "not only as to the subject matter determined, but also as to every other matter which the parties might have litigated in the case and which they might have had decided." Balcom et ux. v. Cain et al., Tex.Civ.App., 81 S.W.2d 827. We recognize that the general proposition announced in the case cited is limited by the proposition announced by our Supreme Court in Moore v. Snowball, 98 Tex. 16, 81 S.W. 5, 8, 66 L.R.A. 745, 107 Am.St.Rep. 596, that "what is really meant by this expression is that a judgment is conclusive upon the issues tendered by the plaintiff's complaint."

■ The judgment sustaining the plea in abatement, under Moore v. Snowball, must rest upon the legal conclusion that the issues tendered in the case at bar were involved in and necessarily adjudicated by the judgment in cause No. 51236. That conclusion necessarily follows on a construction of the records in the two cases. The pooling agreement in issue in cause No. 51236 and in the case at bar is indivisible. Originally, appellants had a cause of action to set aside the lease executed by them to appellee and the pooling agreement; or to sue for their due performance and for the additional consideration which they claimed for its execution. When they sued, as they did in cause No. 51236, for the additional consideration, they merged all their rights involved in the pooling agreement and the execution of the lease, and the final judgment therein was conclusive against them on all rights that could have been asserted by them on the pooling agreement and the lease. The following proposition announced by 26 Tex.Jur. 31, sustains this conclusion:

"There are two situations in which a judgment rendered in a previous suit between the parties may be pleaded as res adjudicata. These are: (1) When the first suit was based upon the same claim or demand as the second; and (2) when the suit was not based upon the same claim or demand as the second but nevertheless involved the determination of some matter that is in issue therein.

"Thus when a contract of an indivisible character, giving rise to only a single cause of action, a judgment thereon merges and concludes all the rights involved therein."

■ As against the final judgment in cause No. 51236, appellants will not be permitted in the case at bar to sue, praying for cancellation of the lease executed by them to appellee and of the pooling agreement on allegations of fraud; the fraud in issue proximately causing the damages sued for in cause No. 51236.

It follows that the judgment of the lower court should be in all things affirmed, and it is accordingly so ordered.

Affirmed.