EL PASO NATIONAL BANK ET AL. V. ERNESTO FUCHS.

No. 367.—Decided February 10, 1896.

**1.  Attachment Does Not Lie in Tort.**

There being no provision in the statutes for issuing attachments upon cases of action arising out of a tort, that writ cannot issue upon such claim.  Such writ can only issue in cases where the amount claimed is due upon a contract express or implied, and only in cases where the amount due may be ascertained with certainty under the contract, or the rules of law applicable thereto.  (Pp. 201, 202.)

**2.  Same—Case in Judgment.**

Plaintiff had deposited Mexican silver with the defendant bank, of which B. was president, for sale upon rise of such coin to 65 cents on the dollar.  B., without authority of the directors or of the plaintiff, transmitted the money to a branch bank in Mexico, where the money was passed to the general account of plaintiff.  Both banks failed.  Held, that the act of B. was a tort and that an attachment against his property was illegally issued in behalf of the plaintiff.  (Pp. 201 to 203.)

ERROR to Court of Civil Appeals for Fourth District, in an appeal from El Paso County.

Suit by Fuchs against the El Paso National Bank and its president for conversion of silver placed in its hands.  Attachment issued and was levied on real estate of Bronson, the president, and plaintiff had judgment for his claim and foreclosure of his attachment lien, a motion to quash attachment having been overruled.  On appeal this judgment was affirmed by the Court of Civil Appeals and defendants obtained writ of error.

*Peyton F. Edwards,* for plaintiff in error.—An attachment cannot legally issue in a suit wherein the cause of action is for damages for writ. Rev. Stats., art. 152, sec. 1, 153, sec. 2, art. 155; Stiff v. Fisher, 2 Texas Civ. Ap. 346; Hochstadler v. Sam, 73 Texas, 315; Langford v. United States, 101 U. S., 345; Drake on Attachment, sec. 4, et. seq.; Anderson Law Dict., "Tort," do "Debt;" 5 Am. & Eng. Ency. Law, 149 (note 1), 150; Holcomb v. Town of Winchester, 52 Conn., 447 (52 Am. Rep., 608); Wilson v. Wilson, 8 Gill, 192; (50 Am. Dec. 685); Smith v. Jernigan, 3 So. Rep. 515.

*Millard Patterson,* for defendant in error.—The Court of Civil Appeals did not hold, as stated by the plaintiff in error, that an attachment lies in this State for damages growing out of a tort generally.  Its holding was that the writ of attachment issued out of the District Court in this case should not have been quashed upon the motion made.  In the assignment of error urged by the plaintiff in error, the error complained of was the refusal of the trial court to quash the attachment issued, "because the suit is founded in tort and not in debt."

We do not understand that one's right to an attachment in Texas, depends upon very fine and abstruse metaphysical distinctions.  We be-

lieve that our legislature used the language which is used in our attachment law to convey the idea that if one man owes another a definite sum of money, (whether the obligation arises out of a breach of contract, or of the violation of another's property rights), and either of certain grounds exist, suit may be brought for the amount owing, and upon proper affidavit and bond, the ancillary writ may issue.    *    *    *

By the unlawful appropriation and conversion of the plaintiff's Mexican silver, as alleged in the plaintiff's original petition, he had, at the time his suit was commenced, an absolute right to recover of E. B. Bronson the value of his Mexican silver, with interest on the same.    See Weaver v. Ashcroft, 50 Texas, 444, and cases cited.

In the original petition of the plaintiff there was a practical waiver of the tort, and the petition presents nothing more, in fact, than a case in assumpsit, to recover the value of the Mexican silver and interest.    It was unnecessary to allege in the petition, formally, that the plaintiff waived the tort. · See MacDonald v. MacDonald, 67 Mich., 122; Elwell v. Martin, 32 Vt., 220.

After bringing the action in the form in which it was brought the plaintiff could not have sued for the recovery of the Mexican silver. Fireman's Insurance Co. v. Cochran, 27 Ala., 228; Moller v. Tuska, 87 N. Y., 166; Boots v. Ferguson, 46 Hun., (N. Y.), 129; Terry v. Munger, 121 N. Y., 161; Johnson v. Reed, 8 Ark., 202; Evans v. Miller, 58 Miss., 120; Railway v. Chew, 67 Ill., 378; Walker v. Duncan, 68 Wis., 624.

It seems to us that our Legislature could not have had in mind the requiring of anything more than that a claim sued upon by attachment should be certain, definite and liquidated.    The division of actions into those arising ex contractu, and those arising ex delicto, affords us no means whatever of arriving at the intention of the Legislature.    As is stated by our Supreme Court, in the case of Hochstadler v. Sam, 73 Texas, 315, a rule sufficient for our guidance has been suggested.    *    *    *    "The remedy does not exist where unliquidated damages are demanded," whether they arise out of a contract or out of a tort.    The fact that the damages grow out of a breach of contract cannot be treated as conclusive, because in the case of Hochstadler v. Sam, above mentioned, the action grew out of a contract, but because the damages were unliquidated, a writ of attachment was denied.

BROWN, ASSOCIATE JUSTICE.—The El Paso National Bank was organized under the laws of the United States, and situated at the City of El Paso, Texas.    By a joint arrangement between Edgar B. Bronson, the president of the El Paso National Bank, acting for the said bank, and Manuel Dublan, Secretary of the Treasury and Public Credit of Mexico, by authority of the Mexican Government, the Banco National de El Paso, Texas, Secursal de C. Juarez, Mexico, was organized as a branch bank of the El Paso National Bank, and was located in Juarez, Mexico. E. B. Bronson was president, and W. H. Austin cashier of both banks. The profits of the Juarez Bank went to the National Bank of El Paso.

The ordinary business of the bank was conducted by the president and the cashier, either one acting in the absence of the other.

On July 12, 1893, Ernesto Fuchs deposited with the El Paso National Bank, $3000 Mexican money of the value of $1800.00 in American money. The following letter accompanied the shipment of the money:

El Paso National Bank,
　　El Paso, Texas.

Gents: Enclosed·please find express receipt of my remittance of three thousand Mexican dollars, which I hereby deposit in your bank to my disposal as soon as silver may go up. I beg you to have the kindness to wire me for my account as soon as you would take the pesos at 65 cents American, so that I can wire to you to buy or not. I would be very much obliged to you for getting your idea as to what will be the future of silver, as at present rate I would lose large amounts. Hoping to hear from you, I remain,

Very truly yours,<br>Ernesto Fuchs.

The following reply was sent by the bank to the said letter:

Ernesto Fuchs, Esq.,
　　Villa Lerdo, Mex.

Dear Sir: Your favor of the 9th inst. is received, enclosing express receipt for $3000 Mexican silver, which shipment we have duly received and will hold subject to your order as requested, and will advise you whenever the price may rise as high as 65 cents.

E. B. Bronson, President.

Immediately upon the receipt of this money, E. B. Bronson, the president of the bank, sent it to the Juarez Bank on the Mexican side, where it was entered to the credit of Fuchs as a general depositor, and the money went into the general fund as assets of the bank. Upon receipt of the money, the following was sent from the Juarez Bank to Fuchs:

Mr. E. Fuchs, Villa Lerdo.

Dear Sir: At the request of the El Paso National Bank we have note the contents of your favor of July 9th, directed to the same, and shall have the pleasure to notify you at once, as soon as Mexican silver is 65 cents, by wire.

Yours truly,<br>Banco National de El Paso, Texas,<br>Sucursal de C. Juarez, Mexico,<br>Max Miller, Mgr.

On August 2, 1893, the El Paso National Bank failed, as likewise did the bank in Juarez. One Beckham was appointed receiver of the El Paso National Bank, and Marcello Leon was appointed receiver of the bank on the Mexican side.

Between the date of the deposit of the money and the suspension of the bank, Fuchs obtained from the bank in Juarez $952 in American money on the faith of the said deposit. He did not know at the time that his money was in the Juarez Bank, but believed that it was in the El Paso National Bank, where it was originally deposited, and he remained in ignorance of its transfer to the Mexican Bank, until after the failure of the said banks.

E. B. Bronson, the president of the El Paso National Bank, transferred the money to the bank in Juarez without having referred it to the Board of Directors, it being, as he said, routine business.

Fuchs sued the El Paso National Bank, represented by its receiver,— E. B. Bronson, its president,—and W. H. Austin, its cashier, to recover the value in American money of the $3000 of Mexican money deposited by him, which he alleges to be, at the time of the conversion, 60 cents on the dollar in American money. An attachment was sued out and levied upon real estate of Bronson and Austin, and a motion was made to quash the attachment, which was overruled. The court gave judgment against the El Paso National Bank and against E. B. Bronson, and foreclosed the lien of the attachment upon the property of Bronson, but gave judgment in favor of Austin against the plaintiff. This judgment was affirmed by the Court of Civil Appeals, from which this writ of error is sued out.

The only question for our consideration is the action of the court in refusing to quash the writ of attachment. The ground upon which the motion was made, and which is here urged, is that the act of Bronson, in sending the money to the Juarez Bank, was a tort, and that the action, as against him, was for damages and would not support the writ of attachment.

The writ of attachment in this case was issued under Articles 152 and 153 of the Revised Statutes. Three things are required by these articles to be embraced in every affidavit for a writ of attachment: (1) The plaintiff must swear "that the defendant is justly indebted to him and the amount of the demand; (2) that the attachment is not sued out for the purpose of injuring or harassing the defendant; and (3) that the plaintiff will probably lose his debt unless such attachment is issued. Eleven grounds for attachment are prescribed by that statute. In every instance in which the cause of action is mentioned it is denominated a debt and in every instance in which the person to be injured by the acts of the defendant is mentioned he is called creditor.

The question to be determined upon this statute is, What is the meaning of the words debt and creditor as therein used? The rule of construction to be applied is by Mr. Sutherland clearly stated thus: "The remedy by attachment is special and extraordinary and the statutory provisions for it must be strictly construed and cannot have force in cases not plainly within its terms." Suth. Stat. Cons., section 393; Elliott v. Jackson, 3 Wis., 575.

In case of Barber v. City of East Dallas, 83 Texas, 150, the court de-

fines the word debt as follows: "In common parlance the word debt is sometimes used to denote any kind of a just demand, and has been differently defined, owing to the subject matter of the statutes in which it has been used; and while ordinarily it imports a sum of money arising upon a contract express or implied, in its more general sense it means that which one person is bound to pay or to perform to another." 5 Am. & Eng. Encycl. Law, 175.

Mr. Drake, in his work on Attachments, sec. 12, says: "Who may be regarded as a creditor may be often a debatable question. A creditor is defined by a recent writer to be one who has a right to require of another the fulfillment of a contract or obligation. Another writer considers a creditor to be one who gives or has given credit to another, one who trusts another, one to whom a debt is due; in a larger sense, one to whom any obligation is due. Webster defines the word thus: 'A person to whom a sum of money or other thing is due by obligation, promise or in law.' The word is susceptible of latitudinous construction, and it is not perhaps as important here to arrive at its general meaning, as to ascertain the views of it and of what constitutes an indebtedness, which have received judicial sanction in connection with the resort to an attachment." He then proceeds to discuss the cases arising in the courts of several States, from the general tenor of which decisions it may be concluded that the debt which will support an attachment is one arising out of a contract, either express or implied by law, 5 Am. & Eng. Encycl. Law, 143; Elliott v. Jackson, 3 Wis., 575.

"In the absence of statutory provision allowing attachment to issue in actions founded on tort, it has been uniformly held that in such actions it will not lie." Drake on Attachments, sec. 10; Hochstadler v. Sam, 73 Texas, 315; Greiner v. Prendergast, 3 La. Ann., 376; Bank v. Turnly, 1 Miles' Rep., 312.

Under the facts of this case it is plain that there was no contract expressed between the plaintiff and the defendant Bronson. Plaintiff deposited his money with the El Paso National Bank, of which Bronson was president, and its receipt was acknowledged by Bronson in his official capacity. The El Paso National Bank was the bailee of the money. Bronson, personally, occupied no such relation to him, and unless the law in some way implied a contract on his part to pay to the plaintiff the value of his money when he (Bronson) committed the tort by removing it from the bank in which it was deposited to another, this suit cannot be claimed to be founded upon contract.

Plaintiff's counsel insists that the plaintiff had the right to waive the tort and sue upon the contract, but in this case that rule could not apply, because there was no contract between the plaintiff and the defendant, either express or implied. Bronson did not convert the money to his own use. He derived no advantage from it, and therefore, under the authorities, no implied promise arose on his part to pay the value of it. To raise an implied promise to pay, the person committing the tort must have converted the property to his own use, derived a benefit from

it, for which benefit he can be charged upon an implied promise to pay the value of it, the owner thereby adopting the act as if done by his own authority (Cooley, Torts, 107 to 111). He cannot claim as upon contract and at the same time maintain that the act done was tortious. If Bronson was guilty of a tort, then he was liable for damages for that tort, and the measure of plaintiff's damages might be the value of the money at the time that it was removed by him from the place of deposit where plaintiff had put it, or he might have claimed perhaps the highest market price of the money at any time up to the trial, but the fact that the same measure of damages may be applied as for breach of contract does not affect the question.

It was claimed by plaintiff's counsel that the word debt as defined in the case of Barber v. The City of East Dallas, is broad enough to include the claim of the plaintiff. It is doubtful whether it would come within the meaning of the word debt as there used, which was a case involving the right of the plaintiff to recover damages to property taken for public use in the City of East Dallas, the law having provided that the City of Dallas should be responsible for the debts of the City of East Dallas. The same liberality of construction does not apply in this case as in that. In that case the plaintiff sought to enforce a legal right by ordinary methods of procedure; in this it is the purpose to enforce a legal right, but by the use of a harsh and extraordinary writ. The object of the two statutes are entirely different and the rules of construction are, therefore, likewise different.

The case of Hochstadler v. Sam, cited above, is relied upon as authority to sustain the attachment in this case. That suit was upon a contract between Hochstadler and Sam, whereby the former employed the latter as traveling salesman and agreed to pay him a commission on all sales made by him within the territory prescribed up to a given amount. Hochstadler refused to employ Sam longer, and the latter brought suit to recover for the breach of the contract. The court held that he could not maintain an attachment upon his cause of action, because it was for damages of such a character that it could not be averred in the affidavit with certainty what amount was due. In the course of the opinion, after quoting from Drake on Attachments, Judge Henry, who delivered the opinion of the court, said: "The text books deal more with cases in which the writ has been allowed in suits for damages for breach of contract than in developing the principle that authorizes its issuance in one case and denies it in another. The illustrations, while solving the difficulty in perhaps the great majority of cases, leave it in force in the others." He said further: "In Wade on Attachments, the conclusion is announced that the standard by which the defendant's liability is to be determined shall be furnished by the contract and not left open to mere speculation or vague conjecture." In fact, in the entire opinion in that case, there is nothing to justify the conclusion that the court intended to intimate that in any case an attachment could be issued upon a cause of action, other than that which arose out of a contract express

or implied. In using the language quoted above, Judge Henry meant simply to say that the books had only attempted to distinguish between the classes of suits for damages for breach of contract wherein attachments are allowed, the damages being fixed by the contract, or not allowed because not so fixed. The language used by Judge Henry refers alone to suits for such damages as arise upon breach of contract and does not imply in any way that damages arising from tort, whether certain or uncertain, may be made the basis of a writ of attachment. That case, when properly understood, instead of furnishing any support for the judgment of the court in the case now before us, clearly enunciates the principle upon which the attachment must fail,—that is, that there being no provision in our statute for issuing attachments upon causes of action arising out of torts, that writ can issue upon such claim.

We think that under our statute it may be clearly and definitely stated that no writ of attachment can issue upon any cause of action founded upon a tort, but that such writ can only issue in cases where the amount claimed is due upon a contract express or implied, and that such writ can only issue in this class of cases where the amount due may be ascertained with certainty under the contract or the rules of law applicable thereto, as in the case of Stiff v. Fisher, 2 Texas Civ. App., 346. The class of cases in which the cause of action arises under a contract, but is too indefinite to support the writ of attachment, is well illustrated by the case of Hochstadler v. Sam, cited above.

We conclude, therefore, that the District Court erred in overruling the motion to quash the attachment issued against the plaintiff in error, E. B. Bronson, and that the Court of Civil Appeals erred in not sustaining the assignment of error based upon that ruling of the District Court. It is, therefore, ordered that the judgments of the District Court and of the Court of Civil Appeals be reversed as to the said E. B. Bronson, and here rendered as follows: That the writ of attachment issued against E. B. Bronson be quashed and set aside and his property discharged from the levy thereof; that the plaintiff Ernesto Fuchs recover of E. B. Bronson the sum recovered by the judgment of the District Court, as therein expressed, and that the plaintiff in error recover of the defendant in error the costs of the Court of Civil Appeals and of this court.

*Reversed and rendered.*