G. D. BELL, Appellant,

v.

James Wesley ISENHOWER et al., Appellees.

No. 10937.

Court of Civil Appeals of Texas. Austin.

Feb. 28, 1962.

Rehearing Denied April 11, 1962.

Second Motion for Rehearing Overruled May 2, 1962.

486

Davee & Davee, Brady, for appellant.

Runge, Marschall & Hall, San Angelo, for appellees.

ARCHER, Chief Justice.

This is an appeal from a judgment of the District Court, based on a jury verdict, in favor of James Wesley Isenhower and William L. Jackson, and against G. D. Bell for $13,192.47, growing out of a controversy over the sale by Bell of his interest in the Bell Feed Store as related to the amount of indebtedness of the store.

The appeal is founded on six points of error with a number of subheads under each point and are generally to the effect that the Court erred in overruling certain exceptions directed to the pleadings; to the admission of certain evidence relative to the contracts, the amount and status of the accounts of the stock; in failing to submit certain requested charges or issues; in failing to grant an instructed verdict; in failing to grant a judgment notwithstanding the verdict of the jury, and finally in rendering judgment for an item of $991.16 and that the judgment entered is indefinite in failing to enter judgment in favor of Bell against William L. Jackson for one-third of any judgment rendered against Bell.

Appellant's assignments of error are very general and not in strict compliance with the rules but we shall endeavor to consider them as best we can.

As has been noted, this litigation arose out of the purchase and sale of the appellant's interest in the business known as the Bell Feed Store because of the existence of an excessive amount of debts. The appellees sued the appellant for damages (1) for breach of a written contract limiting such debts to $8,500.00, (2) for fraudulent misrepresentation as to the amount of such indebtedness, and (3) in the alternate, for rescission of such contract.

By stipulation of counsel reflected in the pretrial order signed February 22, 1961 and by uncontroverted proof, the debts of the Bell Feed Store at the time of this sale were fixed at $19,098.56.

Upon issues submitted by the trial court, the jury found that the appellant represented that the debts of the Bell Feed Store at the time of the sale did not exceed $8,500.00; that this was a misrepresentation of a fact material to the sale and purchase of appellant's interest, that the appellees relied upon such representation, that such representation was untrue and that the parties were not operating under a mutual mistake of fact as to the amount of such indebtedness. Upon the basis of these answers, the Trial Court entered judgment.

On October 2, 1958 an agreement was made by Bell and Isenhower as follows:

"THE STATE OF TEXAS,        }
  COUNTY OF McCULLOCH. }   This preliminary agreement made and entered into by and between G. D. Bell and James Wesley Isenhower, WITNESSETH:

"It is the intention of the parties that said Bell will sell to Isenhower all of his interest in the business known as Bell Feed Store in Brady, Texas, as of the close of business on Octo-

ber 4, 1958. The price to be paid is the sum of $12,000.00 payable as follows: $1,200.00 paid to Bell upon the signing hereof as escrow to show good faith; the further sum of $2,300.00 to be paid upon the signing of the sales agreement hereinafter provided; and the balance of $8,500.00 to be paid to Bell in cash on January 10, 1958. As a further consideration Isenhower will assume the accounts and notes owing by Bell in connection with said business and shall be entitled to receive all of the accounts and notes receivable.

"It is agreed that on or before October 15, 1958, the parties hereto will execute a detailed contract consummating such sale. Such contract to be agreeable to both of the parties hereto. In the event that no agreement is reached as to the details of such contract, or in the event that either of the parties hereto shall die before such date this contract shall be of no further force or effect and the escrow money paid herewith shall be returned to said Isenhower or his heirs or administrator.

"It is agreed that the debts of Bell Feed Store including open accounts and notes, will not exceed the amount of $8,500.00.

"Witness our hands at Brady, Texas, this 2nd day of October, 1958.

"s/ G. D. Bell
"s/ James W. Isenhower"

Subsequently on October 4, 1958 the following contract was entered into:

"THE STATE OF TEXAS, ⎱
  COUNTY OF McCULLOCH. ⎰ This contract made and entered into by and between G. D. Bell, William L. Jackson and James Wesley Isenhower this 4th day of October, 1958, WITNESSETH:

"Whereas, on September 10, 1956, the said G. D. Bell and William L. Jackson formed a partnership in the business known as Bell Feed Store in B. ady, Texas; and

"Whereas on October 2, 1958, the said G. D. Bell and James Wesley Isenhower entered into a preliminary sales agreement for the sale of a part of said business;

"Now, Therefore in order to terminate said partnership and to consummate said sale, the parties agree as follows:

"1. The said G. D. Bell does hereby bargain, sell and convey all of his interest in the said business of Bell Feed Store, including all furniture and equipment (a list of which is attached hereto and referred to), all of the stock of merchandise, supplies, accounts receivable, money on deposit and on hand, good will including the name of said business and the judgment against H. T. Snowden and the judgment against Graham Fitzpatrick to the said William L. Jackson and James Wesley Isenhower in such proportion that the said Jackson will now own one-half of the said business and the said Isenhower will now own one-half of said business.

"2. G. D. Bell will keep and own as his property all of the notes receivable of the said business and William L. Jackson does hereby bargain, sell, transfer and assign without recourse on him, all of his interest in and to said notes receivable.

"3. James Wesley Isenhower has heretofore paid to Bell the sum of $1,200.00 in cash and herewith pays to Bell the additional sum of $2,300.00 in cash, receipt whereof is hereby acknowledged. James Wesley Isenhower further has this day placed on deposit with the Commercial National Bank of Brady, Texas, the sum of $8,500.00 in cash in escrow subject to the withdrawal by the said Bell on January 2, 1959. It is agreed that Isenhower releases the said Bank from all liability to him in connection with such escrow and directs the Bank to

pay such money to Bell on the due date. The said Bell hereby accepts such escrow deposit as full payment to him of all sums due under this contract and hereby releases Isenhower from any further liability hereunder.

"4. The said Jackson and Isenhower assume and obligate themselves to pay notes owing by said business to the Commercial National Bank of Brady totaling $2,400.00 plus accrued interest as they are due and to pay the account owing to the Ralston-Purina Company.

"5. (Not in issue.)

"6. All prepaid insurance premiums are hereby transferred and sold to the said Jackson and Isenhower. Taxes for the year 1958 are to be paid by Jackson and Isenhower.

"7. (Not in issue.)

"8. The said G. D. Bell and William L. Jackson do hereby terminate the partnership heretofore existing between them and by the execution hereof mutually release each other from all of the terms and conditions of said partnership. They further agree that a final accounting has been made as to said partnership and that each of the parties thereof have received in full all of the property, including the profits, to which each is entitled.

"Witness our hands in triplicate the day above written.

"s/ G. D. Bell
"s/ William L. Jackson
"s/ James Wesley Isenhower."

This agreement was acknowledged by all parties thereto.

There are changes in the two agreements. In the first, there is a statement by Bell that the debts of the store will not exceed $8,500.00 but there is no such limitation in the last agreement.

Jackson and Isenhower are brothers-in-law, and Jackson was a partner with Bell in the store. While there is proof of the payment by Isenhower to Bell of $12,000.00 the only consideration to be paid by Jackson was the sale to Bell of Jackson's interest in all of the notes receivable (not listed) and a statement that the partnership of Bell and Jackson was terminated and that a final accounting had been had and that each party had received in full all of the property to which each is entitled.

There is no question but that the partnership of Bell and Jackson had an outstanding indebtedness of $19,098.56, which was owed in the percentage of $\frac{2}{3}$rds by Bell and $\frac{1}{3}$rd by Jackson.

There was extensive testimony given by the parties as well as others as to the transactions between the parties. The jury found that Bell represented that the indebtedness of the store did not exceed $8,500.00. We believe that the evidence supports the finding of the jury.

The judgment of the Court reads, in part, as follows:

" * * * And the Court having made all such additional findings and conclusions as were authorized by law is of the opinion that, based upon such findings, the Jury's affirmative answers to Special Issues 3, 4, 5 and 6 and upon facts proven without dispute, the plaintiffs, James Wesley Isenhower and William L. Jackson, are entitled to a judgment against the defendant, G. D. Bell, in the sum of $10,598.56 with interest at the rate of 6% per annum from October 4, 1958, and upon the same basis, the plaintiff, James Wesley Isenhower, is entitled to a judgment against the defendant, G. D. Bell, for the sum of $12,000.00 and the defendant, G. D. Bell to a recovery against James Wesley Isenhower and William L. Jackson of a two-third ($\frac{2}{3}$) interest in the property and assets of the business known as the Bell Feed Store, but that the plaintiff, James Wesley Isenhower, is not entitled to recover both such sums, and that, in addition thereto, the plaintiffs are entitled to recover from the defendant, G. D. Bell, the sum of $991.16, to-

gether with interest at the rate of 6% per annum from January 27, 1959.

"IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that the plaintiffs James Wesley Isenhower and William L. Jackson, do have and recover of and from the defendant, G. D. Bell, the sum of $13,192.47, together with interest at the legal rate of 6% per annum on said sum from the date of this judgment until said sum and all interest thereon are fully paid. * * "

Plaintiffs sought judgment for all indebtedness in excess of $8,500.00 and in the alternative if there was a mutual mistake for a rescission of the contract and that all parties be restored to their status existing prior to the date of the sale.

Plaintiffs plead the existence of said indebtedness by virtue of the Bulk Sales Act, Art. 4001 et seq., Vernon's Ann.Civ.St., creating a lien in favor of the creditors as of October 4, 1958.

No citation was issued to any of the creditors and none have asserted any claim herein.

Since Jackson was a partner in the Bell Feed Store, he knew or should have known, and in any event is presumed to have known, of the debts of the partnership and he cannot now be heard to claim any damages.

The record does not show that Isenhower or Jackson has paid any of these debts. We are not aware of any authority which Isenhower and Jackson have to collect monies due the creditors of the store. Such creditors have an interest in the assets of the store which Bell sold since the record does not show compliance with the Bulk Sales Law. Art. 4001, V.A.C.S.

We believe that in order to protect the rights of all parties, including all creditors of the Feed Store, that this cause should be reversed and remanded to the end that such creditors, if their debts remain unpaid, be made parties and given an opportunity to protect their interests. This procedure should only be followed in the event Isenhower, despite the fraud practised upon him, wishes to affirm the contract.

We are of the opinion that Isenhower is, as a matter of law, entitled to rescind the contract if he chooses and such rescission can be accomplished in accordance with equitable principles.

The record is not in a condition to permit us to render an effective judgment which would protect the rights of all parties shown to have an interest in the subject matter of this suit.

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.

## ON MOTION FOR REHEARING

By rescinding the contract in accordance with equitable principles, we mean that each party should be placed in the same position he occupied before the transactions involved herein occurred. Each party should be made whole, and as if the contracts herein had never been executed.

If, as appellant asserts, this is impossible, then appellees are relegated to their damages. The only ascertainable damages of which we are aware are the possibility that appellees will be required to pay debts of the Feed Store in excess of $8500.00. When and if such debts are paid by appellees resort may be had against appellant for the damages thus sustained.

Our statement that all creditors of the Feed Store should be made parties was suggestive only, and was made in order to prevent a multiplicity of suits.

When we speak of appellees, we do not intend to imply that appellee Jackson is relieved of any liability as a partner of appellant Bell. Jackson's dual capacity as partner and buyer should be scrupulously observed.

The motion is overruled.

Motion overruled.