**Joe H. CARRUTH, Appellant,**

v.

**J. W. ALLEN et al., Appellees.**

No. 11068.

Court of Civil Appeals of Texas.

Austin.

April 17, 1963.

Rehearing Denied June 13, 1963.

Mueller & Criss, Austin, for appellant.

Clark, Thomas, Harris, Denius & Winters, Wallace A. McLean, Austin, for appellees.

PHILLIPS, Justice.

This is an appeal from a summary judgment granted by the Trial Court in response to a suit for damages brought by Joe H. Carruth, the appellant here, against J. W. Allen, Edgar A. Lashly, Arthur Mitchell, Law Lectures, Inc. and the Cap-

ital National Bank (The Capital National Bank was not one of the original defendants below but intervened as a creditor and pledgee of certain stock and is not a party to this appeal) alleging certain fraudulent representations by the appellees during negotiations which culminated in a contract. J. W. Allen is not a party to this appeal. There were also other intervenors who are not parties to this appeal whose designations and positions taken are not pertinent here. Hereinafter the designation appellees and cross-plaintiffs will refer to Lashly, Mitchell and Law Lectures, Inc.

Appellant alleges that on May 21, 1960 he entered into a contract with the above-named appellees to purchase all of the appellees' stock in two building corporations, namely, Barton Homes, Inc. and Barton View, Inc. At this time appellant owned 32% of stock in Barton View, Inc. That as part of the consideration, appellant agreed to assume all of the debts and obligations of the two corporations and to hold the defendants harmless on account of any obligation, of whatever kind, in connection therewith.

Appellant further alleges that at the time the contract was signed the appellees furnished appellant with a balance sheet and list of accounts payable of Barton View, Inc. That appellees with intent to deceive and defraud appellant falsely and fraudulently represented to appellees that the debts and obligations listed thereon were all of the debts and obligations of Barton View, Inc. That appellees furnished appellant with a "closing projection" statement and a "job cost payoff schedule" which purported to show all of the debts of Barton Homes, Inc. as well as its assets. That the appellees with intent to deceive and defraud appellant falsely and fraudulently represented to plaintiff that the debts and obligations listed thereon were all of the debts and obligations of Barton Homes, Inc.

Appellant then alleges that there were debts outstanding of at least $7,000.00 that were not listed on the abovementioned schedule furnished appellant by the appellees that were in addition to those debts represented by the appellees to be all of the obligations of Barton Homes, Inc. That appellant believed and relied upon said representations and was thereby induced to enter into the contract of May 21, 1960. That appellant has become obligated to pay certain undisclosed debts.

Appellant also alleges that for approximately two years prior to May 21, 1960, appellees Mitchell and Lashly had represented appellant as his attorneys, that appellant had great confidence and trust in Mitchell, that appellee Mitchell had continued to represent appellant as his attorney for a period of two years or more after May 21, 1960 and that appellee Mitchell had represented to appellant that the contract of May 21, 1960 had been checked and was in good order and that Mitchell further represented to the appellant that he would "see him through" on this agreement. That because of the fiduciary and confidential relationship that had been created between Mitchell and the appellant, that Mitchell was acting as appellant's attorney at the time the contract of May 21, 1960 was signed.

Appellant further alleges that he was induced by the appellees to pledge certain stock he owned in Southern Oaks Development Company and in Southern Oaks Realty Company to secure the performance of his obligations under the contract of May 21, 1960. That the appellees represented to appellant that his pledge of stock was to secure only his indebtedness of $7,200.90 to appellees and that the assets of Barton Homes, Inc. would be sufficient to pay off the obligations of the corporation.

The record before us consists of the transcript and the briefs of the parties. From this record it appears that appellant undertook to sell the property that was the subject of the above-mentioned contract, created certain mortgages and in general dealt with the property as if it had been his own. It also appears from the record that

appellant was sued on at least three occasions on various notes and debts that the real property had become subject to prior to the contract of May 21, 1960 and that at least three judgments were obtained against appellant pursuant to said lawsuits.

Appellees answered the appellant's allegations by pleading the abovementioned lawsuits and final judgments against appellant under the contract of May 21, 1960, quoted from these judgments, to the effect that said contract "is valid for all purposes and a binding obligation upon the parties thereto insofar as they are before the court in this proceeding." They further alleged that these judgments were res judicata and stare decisis to the proceeding herein. That appellant is estopped from challenging the validity of the contract as the exact agreement, which is the subject matter of the present lawsuit and which has already been adjudicated.

Appellees further plead as a defense that they did not mislead or defraud the appellant with reference to the financial affairs of Barton Homes, Inc., that appellant conducted his own investigations relative to the matter. That appellant sold in excess of $50,000.00 worth of properties owned by Barton View, Inc. and that by his actions in receiving benefits from the contract he had ratified the contract.

In addition to the defenses pleaded, appellees set up a cross-action against appellant whereby they set out various notes that appellant had either assumed under the contract in question or for which he had become directly liable to these appellees by virtue of the abovementioned contract and prayed for judgment thereon.

On April 30, 1962 appellees filed a motion for summary judgment alleging that appellant's petition had not stated a cause of action in that while alleging certain misstatements and deceptions on the part of the appellees, that appellant does not allege that he relied on these statements; that the contract of May 21, 1960 indicated that appellant had made a full and independent investigation of all the pertinent matters and quoted part of the contract as follows:

"WHEREAS, all parties hereto, having negotiated for a reasonable time, prior to the date of the consummation of the agreements and contracts above recited, and having fully, fairly and completely informed themselves as to the circumstances, facts, and data, surrounding the entire agreement (the corporations involved having fully opened their books to all parties concerned), and sought and secured independent advice, and counsel, and conducted their own investigation, each in his own way and liking, do agree by the execution hereof, that a full disclosure has been made as to all facts."

The motion further sets out the various lawsuits and judgments against the appellant brought under the contract in question and sets up res judicata, stare decisis and estoppel by judgment.

Next, the motion lists numerous transactions wherein the appellant sold, mortgaged and dealt with the real property that was part of the subject matter of the contract in question and states that appellant ratified, adopted and affirmed the contract.

Appellees' Motion for summary judgment is appended by the affidavit of Arthur Mitchell in support of the motion denying any misrepresentation on the part of appellant concerning the alleged "closing projection statement" and denying further that appellees had ever indicated to appellant that the exact cost of the houses under the contract was ascertainable.

On May 1, 1962 cross-plaintiffs (appellees) filed motion for summary judgment against appellant on their cross-action seeking recovery of the various notes for which appellant had become obligated to them under the contract.

On May 11, 1962 appellant filed his affidavit in opposition to defendant's and cross-plaintiff's motion for summary judgment.

In this affidavit, appellant swears that he was induced to enter into the contract of May 21, 1960 by certain representations of the appellees concerning a "closing projection" statement and a "job cost pay off schedule," that the debts and obligations listed thereon were all of the debts and obligations of Barton Homes, Inc. Copies of these two schedules were attached to the affidavit. The affidavit further sets out certain debts and obligations that are not included on either of the two schedules; that appellees had represented to appellant that if the four homes which Barton Homes, Inc. owned could be sold for the price listed on the "closing projection" statement that the proceeds from their sale would discharge all of the debts and obligations of Barton Homes, Inc.; that such statement and representation were false and Barton Homes, Inc. had debts and obligations far in excess of assets available to retire such debts and obligations and in truth and in fact Barton Homes, Inc. was hopelessly insolvent and such financial condition was well known to appellees; that appellant engaged in certain transactions with the property of Barton View, Inc. which he hoped would salvage something out of the transaction of May 21, 1960; that all of the transactions entered into concerning the property were with the express intention of saving as much of the property of both corporations as was possible under the circumstances; that the reason that he had been unable to discharge all of his obligations under the agreement of May 21, 1960 was because of the misrepresentations of the appellees.

On May 11, 1962 a hearing was held on the motions for summary judgment and after argument of counsel the court granted both motions for summary judgment. Immediately after the court had announced its ruling, counsel for appellant requested leave of the court to submit a supplemental affidavit, which request was denied.

On June 7, 1962, before rendition of judgment, appellant filed his supplemental affidavit in opposition to appellees' (defendants and cross-plaintiffs below) motions for summary judgment.

On July 26, 1962 at a hearing on the form of the judgment, the supplemental affidavit filed by appellant was again called to the attention of the court and the court was requested to consider it, which request was denied.

On August 3, 1962 judgment was formally rendered and at a hearing on a motion for new trial on September 7, 1962 the supplemental affidavit was again called to the attention of the court and the court was requested to consider it. This request was again denied.

Appellant has assigned error to the court's refusal to consider his amended or supplemental affidavit.

Appellant's supplemental affidavit contained the following recitals in addition to those set out in his first controverting affidavit:

In addition to his 32% of the stock in Barton View, Inc. appellant had no assets other than his stock in Southern Oaks Realty Co. and Southern Oaks Development Co. That his financial condition was well known to appellees.

That immediately after closing the contract of May 21, 1960 appellant made arrangements for the salesmen necessary to sell the houses, advertised the houses, expended in the neighborhood of $1,000.00 for office rental, advertising, telephone, etc.

Appellant was not aware until some two and one half months later that the homes of Barton Homes, Inc. could not be sold for enough money to retire the debts against them.

Appellant sold an interest in Barton Homes, Inc. to a Mr. Stinson and a Mr. Swindell based on the "closing projection statement" and the "job cost pay off" schedule described above. Because of his efforts and those of Stinson and Swindell

appellant was able to find prospective buyers for all four homes. When the first loan was approved, a closing statement from the title company revealed that the sale of one of the homes would not be sufficient to pay off the indebtedness against it. That the reason for this was the heretofore undisclosed debts of Barton Homes, Inc. Shortly thereafter, appellant learned of another undisclosed debt to a Lumber Company for in excess of $5,000.00 and another outstanding note for $3,000.00.

After discovering the true extent of the false representations that had been made as to the financial condition of the corporation, appellant had a conference with the appellees wherein appellant informed them that they would have to be responsible to him for the undisclosed debts and obligations of both corporations.

That at this time the property of both corporations was in jeopardy of being foreclosed for payment of debts and appellant sold what property he could to refinance and pay creditors in an attempt to prevent such foreclosures.

Immediately after discovering that the appellees had misrepresented certain facts, appellant secured the services of an attorney to represent him.

Prior to May 21, 1960 neither Barton Homes, Inc. nor Barton View., nor any officer or agent thereof opened their books to appellant for inspection nor did he seek or secure independent advice or counsel or conduct his own investigation into the facts and circumstances surrounding the financial condition of either corporation but relied wholly upon the representations that had been made to him by the appellees.

That for more than two years prior to May 21, 1960, appellee Arthur Mitchell had represented appellant as his attorney in various matters and when he signed the contract of May 21, 1960 with appellees he was assured by Mitchell that he had checked the contract for appellant, that it was all right for him to sign it as written and that

he did not have to worry about pledging his stock because the assets of Barton Homes, Inc. were sufficient to satisfy all of the debts of that corporation; that the stock appellees required appellant to pledge was merely to secure the notes appellant had executed to each of the appellees pursuant to the contract of May 21, 1960.

That appellant relied on Mitchell's statements as Mitchell had been his attorney for more than two years and was in fact on May 21, 1960 handling the negotiations for the purchase of the stock of Barton View, Inc. in appellant's behalf.

That appellee Mitchell also represented to appellant on May 21, 1960 that he would continue to represent appellant and remain as president of Barton Homes, Inc. until the time the homes owned by the corporation were sold in accordance with the projected closing statement that had been furnished appellant and until all the debts of the corporation were paid.

After granting the motions for summary judgment, the judgment of the court was that appellant take nothing against the appellees by his suit; that appellees (cross-plaintiffs) recover against appellant Barton Homes, Inc. and Barton View, Inc. (cross-defendants) the various notes by which appellant had become obligated under the contract in question; that the stock that appellant had pledged as security for his performance of the contract be sold at public sale and the proceeds be applied to the satisfaction of appellant's debts to appellees and any additional amount to be awarded to appellant.

There were also awards to certain intervenors who are not parties to this appeal.

In Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929, the Texas Supreme Court stated the purpose and application of the summary judgment rule as follows:

"Rule 166–A, Rules of Civil Procedure, provides for summary judgment '(c) * * * The judgment sought

shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, *show that,* except as to the amount of damages, *there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'* (Emphasis added by Supreme Court.)

" * * * The duty of the court hearing the motion for summary judgment is to determine if there are any issues of fact to be tried, and not to weigh the evidence or determine its credibility, and thus try the case on the affidavits." Citing cases.

The Supreme Court continues quoting from Kaufman v. Blackman, Tex.Civ.App., 239 S.W.2d 422, 428, writ refused, N.R.E.:

" 'The underlying purpose of Rule 166–A was elimination of patently unmeritorious claims or untenable defenses; not being intended to deprive litigants of their right to a full hearing on the merits of any real issue of fact.' The burden of proving that there is no genuine issue of any material fact is upon the movant, and 'All doubts as to the existence of a genuine issue as to a material fact must be resolved against the party moving for a summary judgment.' " Citing cases.

■ In view of the law and the issues of fact raised by appellant's pleading and original affidavit alone, it is the opinion of this Court that the appellees have failed to discharge the burden placed upon them by Rule 166–A, Texas Rules of Civil Procedure and that the case should be reversed and remanded for a trial upon the merits.

Appellant's first amended original petition brought a common law action for fraud and concealment alleging (1) certain undisclosed debts against the property that was the subject matter of the above mentioned contract (2) that appellees had furnished appellant with certain documents (entered as exhibits to the petition) allegedly containing all of the debts of said corporations while in fact there were others known to appellees and that said representations were made to mislead the appellant (3) that appellant relied on the statements and documents presented him by the appellees, that one of the appellees was in fact acting as his attorney at the time the contract was entered into; (4) that appellant has been damaged by the existence of the undisclosed debts.

■ That appellant's petition presents a prima facie case of fraud. 25 Tex.Jur.2d p. 626, sec. 13 defines fraud as " * * * a false statement of a material fact made to be acted on and actually believed and acted on with consequential injury to the person acting thereon." In other words, the false affirmation of a material fact made for the purpose of inducing a bargain and actually accomplishing the purpose with resulting damage will constitute ground for an action for fraud.

Appellees' defense is a denial of any misrepresentation on their part then centers mainly on the contract of May 21, 1960 wherein (1) the wording of the contract discloses that the parties were to deal at arms length, had in fact done so as independent investigations were made by all parties (2) appellant had ratified the contract, had entered into numerous negotiations involving the property which was the subject matter of the contract (3) that several lawsuits were brought by certain creditors (other than appellees) against appellant under the prior obligations appellant assumed under the terms of the contract, that (4) the judgments obtained as a result of the lawsuits confirmed the validity of the contract and appellant is estopped by res adjudicata, estoppel by judgment from now attacking the validity of the contract.

■ It is well settled in the jurisprudence of this State that an injured party may retain the benefits of a contract, confirm its validity and elect to sue for dam-

ages in an action for fraud by which he was induced to enter into the contract. Grabenheimer v. Blum, 63 Tex. 369, 374; Andrews v. Powell, Tex.Civ.App., 242 S.W.2d 656, no writ history. There is no doubt that appellant ratified the contract and having done so was bound by it and was also bound by the obligations attendant thereto.

■ The judgments obtained by the various creditors under the obligations assumed by the appellant under the contract in question do not bar the present suit. In Lott v. Lofton, Tex.Civ.App., 280 S.W. 312, no writ history, the court announced what has come to be the accepted doctrine in Texas to the effect that: "A former judgment will not be a bar to further litigation regarding the same subject-matter, unless the same vital point was put directly in issue, or was fairly within the scope of the pleadings. It is not conclusive of any matter, if the matter be not such that it had of necessity to be determined before the judgment of the court could have been given. Philipowski v. Spencer, 63 Tex. 604." In this case a suit for debt and foreclosure of a lien prosecuted to judgment did not act as a bar to a later suit for fraud attacking the judgment. Nowhere in appellees' answer is there any contention that the question of fraud has been an issue in any of the suits described.

In Cauble v. Cauble, Tex.Civ.App., 2 S.W.2d 967, writ dismissed, this Court held that the doctrine of estoppel by judgment rests upon equitable principles and upon the broad principles of justice which will not permit one to relitigate a particular fact or matter in dispute between the parties which has already been judicially determined by a court of competent jurisdiction upon the ground that the record in question imports absolute verity. The answer given in this opinion to the question of res adjudicata applies here. "The operation of a judgment as an estoppel extends only to matters that were either expressly determined or necessarily involved in the adjudication." 34 Tex.Jur.2d, Sec. 520 and cases there cited.

Neither does the doctrine of merger of cause of action in judgments broaden a judgment to include matter that was not put directly in issue at a former trial nor was fairly within the scope of pleadings. Farmers Royalty Holding Co. v. Kulow, Tex.Civ.App., 186 S.W.2d 318, affirmed 144 Tex. 312, 190 S.W.2d 60.

■■ In spite of the fact that the contract states that full investigation and disclosure has been made by the parties thereto concerning the debts of the corporations involved, appellant alleged fraudulent concealment of debts, that he relied on appellees' statements that there were no debts other than those described and in addition pleads a confidential relationship between himself and the appellee Mitchell of attorney and client. An independent investigation of matters that eventually culminate in a contract does not as a matter of law defeat a right to rely on allegedly false representations. See 25 Tex.Jur.2d, Sec. 27 and the cases there cited. Appellant's allegations raise questions of reliance.

Appellees also seek to sustain the summary judgment denying appellant relief on the ground that there is no evidence to show that appellant has been damaged. The basis of this contention is that since this suit is based on fraud in a corporate stock transaction that Art. 4004 Vernon's Ann. Civ.St. provides the proper measure of damages. Such statute provides, in part, that, "All persons guilty of such fraud shall be liable to the person defrauded for all actual damages suffered, the rule of damages being the difference between the value of the property as represented or as it would have been worth had the promise been fulfilled, and the actual value of the property in the condition it is delivered at the time of the contract."

There is no evidence of value of the property in this record.

Before the enactment of Art. 4004 it was held that whether the action, in a case similar to this, was in fraud and deceit or

on the contract, the measure of damages was the sum reasonably required to remove the encumbrance as to which the false representation applies. Thomas v. Ellison, 102 Tex. 354, 116 S.W. 1141. This is also the measure of damages in suits for breach of warranty against encumbrances. See City of Beaumont v. Moore, 146 Tex. 46, 202 S.W.2d 448.

It is to be noted that the cause of action to recover for such encumbrances arises only when such encumbrance is removed, as paying an outstanding debt, or when the vendee becomes legally liable therefor. Thomas v. Ellison, supra.

It is our opinion that the value of the property here is irrelevant to the measure of damages in this case. Whatever the value of the property, it is less valuable to appellant by the exact amount which appellant pays or becomes obligated to pay. It is a debt against the stocks, or corporations, which he, by reason of fraud on the part of appellees, did not take into account when the contract was made.

As illustrative of our holding place an arbitrary value of $10,000.00 on the stocks, a represented indebtedness of $5,000.00, and an actual indebtedness of $6,000.00. Now apply the measure of damages prescribed by Art. 4004. If the debts had been $5,000.00 as represented, i. e. had the false promise been fulfilled, the value of the property to appellant would have been $5,000.00.

The condition in which the property was delivered, i. e. subject to a debt of $6,000.00, its value to appellant was $4,000.00. The difference between these amounts is $1,000.-00, the amount of the debt.

The appellant had the alternative of suing for fraud under his common law right or under Article 4004. He chose the former. El Paso Development Co. v. Ravel, Tex.Civ.App., 339 S.W.2d 360, writ refused, N. R. E.

When we view the pleadings of the appellant along with the original affidavit filed, it is apparent that appellant has become obligated for the undisclosed debts through the contract of May 21, 1960 or by the judgments obtained against him. It is sufficient that the petition when supplemented by the original affidavit disclosed damages which, if proved, would be sufficient at law. Womack v. Allstate Insurance Company, 156 Tex. 467, 296 S.W.2d 233. A summary judgment is not concerned with the amount of damages, Rule 166-A, T.R.C.P.

In view of our holding that appellant's petition together with the original affidavit filed was sufficient to present a cause of action, it becomes unnecessary to discuss whether or not the court abused its discretion in refusing to consider the supplemental affidavit filed by appellant.

In view of our holding that it was error for the trial court to have granted appellees' motion for summary judgment, it follows that it was also error in granting the cross-plaintiffs' (appellees') motion for summary judgment.

The cause is reversed and remanded for trial.

Reversed and remanded.

HUGHES, Justice (concurring).

In the opinion for the Court by Associate Justice PHILLIPS the case of Thomas v. Ellison, 102 Tex. 354, 116 S.W. 1141, is cited for the rule prescribing the measure of damages in cases of this character. The Court there discussed the rights of a purchaser of land who had been defrauded by misrepresentations by the vendor as to the amount of debts outstanding against the property. As to such concealed debts the Court held that the purchaser had no cause of action against the vendor until he had paid such debts or had become legally liable therefor. I quote from the opinion:

"We are of the opinion that the court erred in refusing to quash the attachment on the ground set up in the motion. The cause of action stated in the third amended petition, and in those which preceded it, for the recovery of

damages for the deceit practiced was for a tort, and not for a debt in the sense of the attachment law, and it constituted no lawful basis for the writ. El Paso Bank v. Fuchs, 89 Tex. 197, 34 S.W. 206. We do not understand counsel for plaintiff to contend that a cause of action like that just referred to would sustain an attachment. Their contention is that the third amended petition disclosed a cause of action, however defectively stated, for the recovery, upon the broken warranty, of the amount of the incumbrance, as for a debt existing, but not mature. But the trouble with this is that no such cause of action existed when the attachment was sued out, and none such arose until the subsequent payment of the Harrison notes. Until that payment was made the defendant owed, not the plaintiff, but the holders of the notes. The plaintiff, when he sued out the writ, had neither paid, nor, so far as his allegations show, assumed or in any way become bound for the payment of, the notes. They were merely secured by a lien on his property, and this gave him the right to discharge them and look to Thomas, Jr., for reimbursement; but, until he had either paid them, or substituted himself for Thomas, Jr., as Harrison's debtor, he had no cause of action against Thomas, Jr., on the warranty to recover the amount due on them. Gunst v. Pelham, 74 Tex. 586, 12 S.W. 233."

In Bell v. Isenhower, Tex.Civ.App., 356 S.W.2d 485, reversed Tex., 365 S.W.2d 354, this Court, without knowledge of the above case, applied the principle of the above case to a similar fact situation. The subject matter of the sale there was a feed store and the amount of the outstanding debts was misrepresented. The Trial Court rendered judgment for the full amount of such debts in favor of the purchaser and against the seller. We reversed such judgment on the ground that the purchaser not having paid such debts could not recover for them.

We also called attention to the liability of the purchaser to creditors of the store under Art. 4001, V.A.C.S., Bulk Sales Law, compliance with such statute not having been shown.

There is no question, under Thomas v. Ellison, but that we were correct in our holding as to the substantial rights of the parties. We may have erred in remanding the case and in not rendering judgment against the purchaser as we were urged to do. Since the case had to be reversed we exercised a discretion which we believed we had under Rules 434, 505, T.R.C.P. and we remanded rather than rendered the cause. See Benoit v. Wilson, 150 Tex. 273, 239 S.W.2d 792.

We could have rendered judgment for Bell on the ground that the evidence did not show that Isenhower had paid any unassumed debts and did not show the extent of his liability under the Bulk Sales Law or that he had become obligated for such debts in any other manner. The record does show that Isenhower is liable to creditors for the value of the stock, etc. purchased, under the Bulk Sales Law, but since such value is not shown, no judgment could be rendered. Certainly elemental justice required us to remand this case rather than render judgment as we had the power to do. This remand, however, was the Court's responsibility, not appellant's. If we abused our discretion in remanding the cause, appellant should not be made to suffer for it. Appellant sought *rendition* of judgment on the ground that there was no evidence to support it. These assignments were properly presented to this Court.

The Supreme Court in Isenhower refused to consider the assignments by Bell filed in this Court under which the judgment could have been reversed and rendered in his favor, Bell not filing an application for writ of error, saying that since we reversed and remanded the case that Court could only "review the points of error in Bell's brief in the Court of Civil Appeals to see if there was error assigned which would support

the judgment of the Court of Civil Appeals."

The rule, as stated in the leading case of Holland v. Nimitz, 111 Tex. 419, 232 S.W. 298, 239 S.W. 185, is: "But it seems to be the definitely settled rule that the party who prevailed in the Court of Civil Appeals is entitled to have his assignments, which were properly presented in that court, considered by the Supreme Court insofar as it may be necessary *to determine what judgment should have been rendered by the Court of Civil Appeals*." This is the language of Mr. Justice Greenwood. The italics are mine.

The judgment which we should have rendered in Isenhower was, as clearly reflected by our opinion, one denying Isenhower any money recovery, unless, as we believed, in the interest of justice a remand was in order.

It is a very strange rule which deprived Mr. Bell of the total benefit of a good assignment of error because having received less under it than he was entitled he saw fit not to complain and accept a remand of the case rather than insist on its rendition.

Under the rule as stated in Holland v. Nimitz, supra, this result could not have occurred. Under it our judgment which, on proper assignments, vacated a Trial Court judgment which was wholly without evidence or law to support it would have been sustained.

## ON MOTION FOR REHEARING

PHILLIPS, Justice.

Appellees Lashly and Mitchell call this Court's attention to the fact that appellant has made serious charges against them in his First Amended Original Petition and in the two affidavits described in our opinion.

These appellees further point out to the Court that the appellant refused to give his deposition in connection with such charges or to be cross examined concerning them.

It is true that at the time appellees sought to take appellant's deposition, he refused.

Appellees further contend that while a careful reader of our opinion would discern that we are only stating and restating charges that have been made against appellees from the pleadings and ex parte affidavits of appellant and that such charges are merely allegations rather than proven facts, a cursory reading of the opinion might lead one to believe that this Court has stated the charges as though they are true.

We do not intend to give this impression.

This is an appeal from a proceeding that never progressed past the summary judgment stage in the Trial Court. Appellant has yet to make his case.

We do believe, however, that appellant has presented enough summary judgment evidence to entitle him to a trial on his allegations of fraud.

■ Appellees contend that inasmuch as this Court holds that appellant ratified his contract with appellees, appellant has become bound by certain notes and judgments resulting from the contract, that this Court should have affirmed the Trial Court granting appellees' (defendants and cross-plaintiffs below) cross motion for summary judgment and entering judgment thereon. Blythe v. Speake, 23 Tex. 429; Payton v. City of Big Springs, Tex.Civ.App., 157 S. W.2d 975, no writ history.

We hold that appellees are correct in their contention and we grant the appellees' motion to this extent and now affirm the action of the Trial Court in granting summary judgment on appellees' cross motion for summary judgment.

Costs for this suit shall be apportioned equally between appellant and appellees herein.

The remaining points raised by the motions filed are hereby overruled.

Reversed and remanded in part and affirmed in part.