FARMERS ROYALTY HOLDING CO. et al.
v. KULOW et al.

No. 11682.

Court of Civil Appeals of Texas. Galveston.

Feb. 1, 1945.

Rehearing Denied March 29, 1945.

Hollis Massey, of Columbus, for appellant.

W. I. Hill, of Bellville, for appellees Kulow et al.

R. H. Whilden and Vernon Elledge, both of Houston, for appellee Shell Oil Co., Inc.

MONTEITH, Chief Justice.

This action was brought by appellants, Farmers Royalty Holding Company et al., in statutory form of trespass to try title for the recovery from appellees, Charles Kulow et al., of an undivided one-half interest in the mineral estate in two tracts of land in Austin County, Texas, aggregating about 251 acres. By supplemental pleadings appellants alleged that they were entitled to recover the mineral interest claimed by them in said land under the after acquired title rule.

Appellees answered by general denials, pleas of not guilty, and other defensive pleas.

At the conclusion of the evidence the court discharged the jury and rendered judgment in favor of appellees.

Appellants herein are warrantees or subsequent purchasers from appellee Charles Kulow and his deceased wife. The appellees, except Charles Kulow and the Shell Oil Company, are the heirs of Mrs. Kulow. The Shell Oil Company is the purchaser of an oil lease from the Kulows.

The material facts in the case are undisputed. By deed dated June 30, 1915, John Kulow and wife conveyed the land in controversy to Charles Kulow, retaining a vendor's lien in said deed to secure the payment of a purchase money note for the sum of $3025.50. Thereafter, by separate deeds dated December 12, 1931, Charles Kulow and wife conveyed a ⅜ undivided interest in the mineral estate in said land to Farmers Royalty Holding Company and an undivided ⅛ mineral interest therein to G. T. Blankenship. Both of said deeds contained covenants of general warranty.

In 1934 Charles Kulow and wife filed suit against Farmers Royalty Holding Company and G. T. Blankenship for the cancellation of said mineral deeds because of alleged fraud. Appellant, Farmers Mutual Royalty Syndicate, intervened in the suit as a subsequent purchaser from Blankenship. This action was removed to the Federal Court and on October 10, 1934, the parties entered into an agreement for a compromise and settlement, and judgment was entered thereon in said suit vesting title to a ¾ undivided interest in the mineral estate in said land in Charles Kulow and wife, and a ¼ undivided interest therein in Farmers Royalty Holding Company and Farmers Mutual Royalty Syndicate.

Said judgment provided in part:

"* * * that the parties by the terms of said settlement have agreed that the title to the ½ minerals in controversy be vested ½ in plaintiffs, ¼ in Farmers Mutual Royalty Syndicate * * * and ¼ in Farmers Royalty Holding Company; thus vesting the entire minerals in and under the 250 acre tract, ¾ thereof in plaintiffs, ⅛ in Farmers Mutual Royalty Syndicate, Inc., and ⅛ in Farmers Royalty Holding Company; that the stock referred to in said petition be cancelled; that the action of plaintiffs and the cross-action of defendants for damages one against the other be dismissed with prejudice * * *.

"It is therefore ordered, adjudged, and decreed by the court as follows: (1) That all the minerals in and under the land described in plaintiffs' bill of complaint be

and the same are hereby vested in fee simple, together with all rights pertinent or appendant, and the right of ingress and egress; an undivided 3/4 interest in plaintiffs, Charles Kulow and wife, Antonie Kulow; an undivided 1/8 of the entire minerals in and under said land in Farmers Mutual Royalty Syndicate, Inc., a corporation; and an undivided 1/8 interest in and to the entire minerals in and under said property in Farmers Royalty Holding Company, a corporation; (2) That the action for damages by plaintiffs against defendants and the cross-action for damages by defendants against plaintiffs both be and the same are hereby dismissed with prejudice. (3) That the stock and certificates thereof issued by Farmers Royalty Holding Company to plaintiffs or either of them be and the same is hereby cancelled. (4) That the costs of this suit be paid equally by the plaintiffs and the defendants."

On December 4, 1936, Herman Buchtien, the owner and holder of the balance due on the said purchase money note for the sum of $3025.50, and the owner of the superior title retained therein, filed suit in the State court against Kulow and wife, Farmers Royalty Holding Company, and Farmers Mutual Royalty Syndicate for foreclosure of his vendor's lien and to remove cloud cast upon his title by reason of the claims of appellants under their mineral deeds from Kulow and wife. On January 6, 1937, judgment was rendered in favor of Buchtien, awarding a foreclosure of his lien as against all defendants, removing cloud from his title and providing that absolute title vest in the purchaser at foreclosure sale. Buchtien purchased said land at foreclosure sale on April 6, 1937. On April 17, 1937, he conveyed the land in controversy to Kulow for a recited consideration of $2375.00.

■ It is the settled law in this state that "when one conveys land by warranty of title or in such manner as to be estopped to dispute the title of his grantee, a title subsequently acquired to that land by the grantor will pass eo instante to his warrantee, binding both the warrantor and his heirs and subsequent purchasers from either." Caswell v. Llano Oil Co., 120 Tex. 139, 36 S.W.2d 208; Farmers Royalty Holding Co. v. Cherry, Tex.Civ.App., 142 S.W.2d 255, affirmed by Supreme Court, 138 Tex. 576, 160 S.W.2d 908, 910; Baldwin v. Root, 80 Tex. 546, 553, 43 T.J. 249-250, 21 T.J. 23, 12 T.J. 12-57.

In the case of Farmers Royalty Holding Co. v. Cherry, supra, the court in its opinion, quoting with approval from Freeman on Judgments, 5th Ed., Vol. 2, Sec. 714, says: "* * * So where a party plaintiff claiming title through his predecessor under a warranty deed, fails because of the invalidity of a deed to his predecessor, the subsequent acquirement of title by the latter inures to the plaintiff's benefit by virtue of the warranty and may be the basis of a new action by him."

The facts in the instant case are similar in all material respects to those in the cases of Caswell v. Llano Oil Co., and Cherry v. Farmers Royalty Holding Co., supra, with the exception of the fact that, in the instant case, appellants were divested of one-half of their mineral interests in the land in controversy by the agreed judgment in the Federal court prior to their divesture of title under the Buchtien foreclosure suit, while in the cited cases there had been no change in the title of the warrantees prior to their divesture by foreclosure sale in the Caswell case, and by judgment in trespass to try title in the Cherry case.

Under the above facts, the controlling question presented in the appeal is whether, under the doctrine of merger by virtue of the agreed judgment in the Federal court, the rights of appellants as warrantees under the mineral deeds from Charles Kulow and wife were extinguished and appellants were deprived of their rights of recovery of an after acquired title.

■ The nature of the doctrine of merger and its limitations are well stated in Volume 34, Corpus Juris, pages 752-754, as follows:

"Sec. 1163 (b). Doctrine of Merger. A claim or demand, being put in suit and passing to final judgment, is merged or swallowed up in the judgment, loses its vitality, and cannot thereafter be used either as a cause of action or as a set-off, unless the statute otherwise provides; and this rule applies to a final decree of a court of equity. Moreover, as a general rule all the peculiar qualities of the claim are merged in the judgment, which then stands on the same footing as all other judgments. And these rules apply to all species of demands, including contracts, bonds, and promissory notes, but not, according to the weight of authority, a judgment on which a new judgment is recovered.

"Limitation of Doctrine. The doctrine of merger will not, however, be carried any further than the ends of justice require; the judgment does not annihilate the debt or destroy its character as evidence, nor does it deprive the creditor of his right to resort to a fund held by a trustee, or to avail himself of a lien or security held for the debt; and when the essential rights of the parties are influenced by the original contract, the court will look behind the judgment for the purpose of ascertaining what the original contract was."

In the case of Murphy v. Manning, 134 Mass. 488, it was held that a judgment does not obliterate the essential features of the obligation on which it was rendered.

In the case of Gould v. Svendsgaard, 141 Minn. 437, 170 N.W. 595, 596, it was held that "the law of merger does not forbid all inquiry into the nature of the cause of action. If the prevailing party was entitled to certain privileges, or exemption from certain burdens, under his contract he may be entitled to the same privileges and exemptions under his judgment. Whenever justice requires it, the judgment will generally be construed not as new debt but as an old debt in a new form."

The agreement of compromise and settlement, on which the judgment in the Federal court was based, fixed and established the rights of the parties in the land in controversy. It is silent as to the covenants of warranty contained in said mineral deeds. Its effect was to deny to Kulow and wife a cancellation of the deeds of a 1/4 undivided interest in said land, and to leave the covenants of warranty of Kulow and wife, insofar as they applied to the 1/4 interest which was vested in appellants, undisturbed. The decree entered in the Federal court carried out the terms of the compromise agreement.

It follows, we think, that the doctrine of merger has no application in the instant case, since the covenants of warranty, in so far as they applied to the interests retained by appellants, were not in issue in that case—and that under the terms of said judgment the two corporations retained the same character of title to the mineral estate in said land as was vested in them under the mineral deeds from Kulow and wife, in 1931.

It follows from the above conclusions that the judgment of the trial court must be reversed and judgment here rendered in favor of appellants.

Reversed and rendered.

GRAVES, Justice (dissenting).

The dissent rests upon these findings and conclusions:

(1) This counter-proposition from the appellees' brief, together with the appended list of authorities cited by them in support thereof, is adopted as expressive of the view here taken that the judgment of the trial court in this cause was correct, and should have been sustained:

"Appellants' case rests wholly upon the contention that title revested in them after the Buchtien foreclosure. Title did not revest in them unless they held a warranty, either express or implied. All rights which they held under the mineral deeds, including the warranty therein, were merged into the judgment in the Federal Court, and unless they have a warranty by virtue of the judgment in the Federal Court, they have no warranty. The judgment in the Federal Court does not contain a warranty, and hence, at the time of Buchtien foreclosure, appellants held no warranty. Since they held no warranty, title did not revest in them after the Buchtien foreclosure."

"Cases.

"Beitel v. Dobbin, Tex.Civ.App., 44 S. W. 299, writ refused; Burlington State Bank v. Marlin Nat. Bank, Tex.Civ.App., 207 S.W. 954; Caswell v. Llano Oil Co., 120 Tex. 139, 36 S.W.2d 208; Cavers v. Sioux Oil Co., Tex.Com.App., 38 S.W.2d 862, 864; Cherry v. Farmers Holding Co., 138 Tex. 576, 160 S.W.2d 908; Davis v. Biggs, Tex.Civ.App., 182 S.W.2d 1017; Davis v. First Nat. Bank, 139 Tex. 36, 161 S.W.2d 467, 144 A.L.R. 1; Flaniken v. Neal, 67 Tex. 629, 4 S.W. 212; Freeman v. McAninch, 87 Tex. 132, 27 S.W. 97, 47 Am.St.Rep. 79; Lindsay v. Freeman, 83 Tex. 259, 18 S.W. 727; Litton v. Waters, Tex.Civ.App., 161 S.W.2d 1095; Permian Oil Co. v. Smith, 129 Tex. 413, 107 S.W.2d 564, 111 A.L.R. 1152; Id., Tex.Civ.App., 73 S.W.2d 490; Standard Savings & Loan Ass'n v. Miller, Tex.Civ.App., 114 S.W.2d 1201; Sumter v. Humble Oil, Tex.Civ. App., 139 S.W.2d 623; Talley v. Howsley, Tex.Sup., 176 S.W.2d 158; Thomas v. First State Bank, Tex.Civ.App., 57 S.W. 2d 262; Trammell v. Rosen, 106 Tex. 132, 153 S.W. 1161; Vaughan v. Kiesling, Tex.

Civ.App., 150 S.W.2d 435; Webb v. National Standard Fire Ins. Co., Tex.Civ. App., 179 S.W.2d 587; White **v.** White, Tex.Sup., 179 S.W.2d 503.

"Texts.
"26 Tex.Jur., 29, Judgments, Sec. 361–2."

GRAVES, Justice (dissenting on rehearing).

After further investigation upon rehearing, the original dissent is reiterated, with this added reference to what are considered to be some of the essential facts underlying the controlling holding then made as being supported by the authorities cited thereunder:

(1) It goes without the saying that, unless the original warranties given appellants by the Kulows in the mineral deeds were still extant, and, as such, inured to the benefit of appellants at the time the Kulows re-acquired the title from Buchtien on December 4 of 1936, the rule of after-acquired title did not apply;

(2) It seems demonstrable from the undisputed facts in the record that such warranties had not so persisted, and did not then exist, because they had been put to death by the original parties thereto themselves, in the judgment they procured from the Federal court by the all-pervading character of the agreement they induced that court to approve; that suit was not one in trespass to try title—it was anything but that, being one wholly in equity and on the equity side of that court's docket, in which these parties, the appellants and the appellees, through their respective pleadings and supporting testimony, sought a judicial determination by that court upon the single controversy between them of whether such original mineral-deeds of the appellees to appellants should, in toto, be cancelled and held for naught ab initio; or whether they should be validated—in accordance with their tenor and effect—and a consequent cloud cast upon the title to the land by their claimed existence removed.

Appellees had sought the cancellation on the ground that the execution and delivery of such deeds had been induced by fraudulent misrepresentations of appellants as to the value of their own corporation-stock, which, undisputedly, had constituted the sole consideration therefor, together with a further count that there had been no legal acknowledgment by Mrs. Kulow of the execution thereof; whereas, the appellants, in turn, had denied the fraud, asserted the validity of the deeds in all respects, including the covenants-of-warranty therein, and, becoming actors over against appellants by cross-action, had sought—and sought alone—the validation at the court's hands of the deeds as written, and the removal of the alleged cloud upon their claimed title thereto resulting from appellee's claim to such invalidity;

(3) Wherefore, the conclusion seems to follow, inevitably, not only that the covenants-of-warranty were so in issue in the Federal court, and that such validity of the mineral-deeds in toto, including these covenants as integral parts thereof, were not only so involved, but that they in fact constituted the sole over-all controversy before that court;

(4) The parties themselves, by their acts then taken, likewise indubitably seem to have so construed the two court-proceedings in which they jointly and severally participated, to-wit, the Federal court's agreed-judgment, and the Buchtien foreclosure decree in the state court;

(5) Such mutual construction was, among many other recitations, evidenced by this provision in the Federal court suit, to-wit:

"* * * and for and in consideration of the promise by all of the parties hereto to forego any and all suits and causes of action, as well as choses in action, one against the other and one to the other that may now exist in disparagement and in derogation of this settlement and agreement, have and by these presents do fix, and establish all of our rights, interests, titles, claims, and demands in and to the mineral estate in the property hereinabove described."

With the issue or issues so joined between them as to pre-existing relations, and a stalemate—so to speak—having been reached thereon, the parties thus decided to wipe the slate clean of them all, and to start all over again by each side taking what they agreed to in their two judgments, and no more—in the most comprehensive terms therein providing that there should be no residuum nor residue whatever—necessarily including the original warranties—left over for either. To that end, after apportioning the new allocations of the lands to each, it was thus specifically provided that the Kulows were to turn back to appellants the stock that had so formed the sole consideration for the old

mineral-deeds, to-wit: "and the redelivery by the said Charles Kulow and wife to the Farmers Royalty Holding Company of any and all stock issued by it to the said Charles Kulow and wife as a consideration for the mineral deeds heretofore executed by the said Charles Kulow and wife to the Farmers Royalty Holding Company and the said G. T. Blankenship."

Likewise, the Buchtien judgment, to which the appellants became participating privies, in consideration of an agreement between the parties thereto that no judgment therein would be taken against them for money or court costs, decreed as follows:

"It is therefore the judgment of the court and so ordered, adjudged and decreed by the court that the plaintiff, Herman Buchtien, have his judgment against the defendants, Farmers Royalty Holding Company and Farmers Mutual Royalty Syndicate, removing cloud cast upon the title to the said two tracts of land by the said asserted claims of defendants, Farmers Royalty Holding Company and Farmers Mutual Royalty Syndicate, and that title and all semblance of title asserted by the said defendants, Farmers Royalty Holding Company and Farmers Mutual Royalty Syndicate, to the royalties, minerals, etc., in and to the above designated and described two tracts of land be divested absolutely out of the said defendants, Farmers Holding Company and Farmers Mutual Royalty Syndicate, and that the title to the two tracts of land vest absolutely in the purchaser at the sheriff's sale thereof. * * *."

(6) The terms of these two agreed-judgments, dealing thus directly with the question at issue between themselves as to whether or not the original covenants-of-warranty from the Kulows to the corporations, were valid and still subsisting, were thus in unmistakable terms disposed of by agreement with such judicial sanction between them, and both sides were not only bound thereby, but also estopped to now contend otherwise. Those solemn judgments are, therefore, considered to be determinative of this lawsuit.

(7) The authorities cited in the original dissent are still thought to support it, as well as this addendum thereto.

It further seems clear, too, that the case of Cherry v. Farmers Royalty, 138 Tex. 576, 160 S.W.2d 908, 909, upon which appellants strongly relied, should be construed as supporting the appellees instead, it being readily distinguishable upon its facts from those here. This one determination of the Supreme Court therein seems to disclose a distinctive differentiation between this case and it, to-wit:

"It does not appear that any of the defendants in that suit sought any adjudication of rights as between themselves. Webel and wife did not follow up their suit which was transferred to the Federal Court and same was dismissed for want of prosecution."

Contrarily to that status in the Cherry suit, which was left, by reason of it, plainly subject to the application of the after-acquired title rule, these parties in the suit at bar, as indicated, not only so sought adjudications of the several rights as between themselves in the continued existence or not of the warranties as affected each of them, but so directly and officially procured the stated adjudications of every right, actual and potential, that might or could exist between them with reference thereto.

Under these conclusions, appellees' motion for rehearing should have been granted, and the trial court's judgment affirmed.