**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff-Appellee,**

v.

**Larry P. DYE, a/k/a Lukey P. Dye, Defendant-Appellant.**

**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff-Appellee,**

v.

**Jerry B. DYE, Defendant-Appellant.**

Nos. 79-1512, 79-1513.

United States Court of Appeals,
Fifth Circuit.
Unit B

April 17, 1981.

---

See also, 5 Cir., 642 F.2d 833.

Thomas R. Burnside, Jr., Augusta, Ga., for defendants-appellants.

Hull, Towill, Norman, Barrett & Johnson, David E. Hudson, Augusta, Ga., for plaintiffs-appellees.

Before KRAVITCH and FRANK M. JOHNSON, Jr., Circuit Judges, and ALLGOOD,* District Judge.

KRAVITCH, Circuit Judge.

Larry Dye and Jerry Dye, appellants in two consolidated cases, appeal from the grant of summary judgment for plaintiff-appellee Federal Deposit Insurance Corporation [FDIC]. The district court held that FDIC as corporation was entitled to recover the amounts sued for on two notes of which Larry Dye was the maker and twelve notes of which Jerry Dye was the maker or guar-

* District Judge of the Northern District of Alabama, sitting by designation.

antor.[1] On appeal, appellants primarily argue that there had been valid foreclosure sales of property securing six of the notes, one of Larry Dye's and five of Jerry Dye's.[2] Thus, under Georgia case law, FDIC could sue only for a deficiency judgment on each note, not the previously outstanding balance which was the relief sought. Moreover, under *Ga.Code Ann.* § 67–1503,[3] FDIC would be prohibited from suing for deficiency judgments because it did not obtain judicial confirmation of the foreclosure sales. We hold that there were no consummated foreclosure sales and affirm the grant of summary judgment on the specified six notes.

Jerry Dye also contends that one of the other notes on which the district court granted summary judgment for the FDIC had been previously satisfied. Here there is a genuine issue of fact, requiring reversal of that portion of the summary judgment.

## I.

On May 20, 1977, First Augusta Bank & Trust Co. [FABT] was placed in receivership; FDIC was appointed receiver. To facilitate the sale of FABT's operating assets to another bank, FDIC as receiver sold FABT's less desirable assets to itself as a corporation. Also on May 20, the superior court, pursuant to *Ga.Code Ann.* § 41A–719,[4] approved the contract for this sale. Included in these assets were two notes of which Larry Dye was the maker and thirteen notes[5] of which Jerry Dye was the guarantor or maker together with the security deeds for the six notes discussed *supra.*

Under a power of sale contained in the security deeds, FDIC attempted to foreclose on the property pledged as security on the six notes. FDIC published foreclosure notices in January, 1978, advertising a February sale. At the sale, FDIC was the high bidder for each piece of property. FDIC filed a petition to confirm the sales, but then learned that the foreclosure advertisements had incorrectly stated that FDIC *as receiver* was the owner of the security deeds. Accordingly, FDIC ran new foreclosure advertisements for a March sale, but the new advertisements also were incorrect. FDIC readvertised in April; this sale was cancelled as a result of negotiations with Jerry Dye (both on his own behalf and as Larry Dye's guarantor and attorney) who was attempting to sell the property at

---

1. As a result of this holding, FDIC recovered from Larry Dye $73,325.24 on the note sued on under Count 1 and $1,691.24 on the note sued on under Count 2. FDIC recovered from Jerry Dye the following amounts on the twelve notes: Count 1 $3,827.99; Count 2 $50,433.58; Count 3 $43,259.04; Count 4 $1,846.35; Count 5 $116,789.06; Count 6 $48,005.31; Count 7 $73,325.24; Count 8 $1,691.24; Count 9 $10,906.09; Count 11 $9,825.53; Count 12 $8,602.45; and Count 14 $119,159.46. All amounts except the $43,259.04 and the $8,602.45 include attorney's fees of 15%. The $73,325.24 does not include interest for the first year.

2. Property secured Larry Dye's note sued on in Count 1 and Jerry Dye's notes sued on in Counts 2, 3, 7, 9, and 12.

3. Section 67–1503 provides:
   **67–1503 Confirmation of sales under powers**
   When any real estate is sold on foreclosure, without legal process, under powers contained in security deeds, mortgages or other lien contracts, and at such sale said real estate does not bring the amount of the debt secured by such deed, mortgage, or contract, no action may be taken to obtain a deficiency judgment unless the person instituting the foreclosure proceedings shall, within 30 days after such sale, report the sale to the judge of the superior court of the county in which the land lies for confirmation and approval, and obtains an order of confirmation and approval thereon.

4. Section 719 provides in relevant part:
   **41A–719 Sales of real property**
   The department may, with leave of and upon the terms and conditions prescribed by the court, sell any real property of the financial institution of which it is in possession as receiver. The order of the court authorizing such sale shall state whether the sale shall be entirely for cash or partly for cash and partly for evidences of indebtedness, and whether it shall be public or private. Each such sale of real property shall be confirmed by the court, if all the terms and conditions of its order authorizing such sale have been complied with.

5. FDIC did not recover on the note sued on under Count 10.

prices higher than FDIC would have bid at the foreclosure sales.

On April 8, 1978, the superior court, without explanation,[6] denied confirmation of the February sales. Neither before nor after this date were deeds executed transferring title to the property in dispute, nor did FDIC make any payment pursuant to the bid at the foreclosure sales.

Several months later, Trident Realty, Inc., the debtor on one of the notes guaranteed by Jerry Dye, "sold" to a third party the property which secured the note and which had been included in the foreclosure sales.

In separate suits, FDIC sued Jerry Dye and Larry Dye for the outstanding balances on the notes as if there had been no foreclosure sales. The district court granted summary judgment for FDIC against Larry Dye on both notes and against Jerry Dye on all but one. Pursuant to Fed.R.Civ.P. 54(b), the court expressly made the judgment on the notes a final judgment, thus giving this court jurisdiction.[7]

The appeal presents two primary issues:

1) Whether there were valid foreclosure sales.

2) Whether FDIC's sale of the notes to itself was void as self-dealing.

## II.

■ Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When the parties' dispute is factual, the "burden of proof falls upon the party seeking the summary judgment, and all reasonable doubts as to the existence of a genuine issue of material fact 'must be resolved against the moving party.'" *Kennett-Murray Corp. v. Bone,* 622 F.2d 887, 892 (5th Cir. 1980). "On the other hand, one who resists summary judgment must meet the movant's affidavits with opposing affidavits setting forth specific facts to show why there is an issue for trial, or at the very least stating reasons why he cannot do so." *Gossett v. Du-Ra-Kel Corp.,* 569 F.2d 869, 872 (5th Cir. 1978). The district court's order granting summary judgment under the above standards is not a discretionary decision and thus should be independently reviewed by this court. *See National Screen Service Corp. v. Poster Exchange, Inc.,* 305 F.2d 647 (5th Cir. 1962).[8]

■ Where the parties' dispute is purely legal, this court reviews the grant of summary judgment as it would any question of law raised on appeal.

The first issue raised here is a purely legal one: do the undisputed facts show that there were valid foreclosure sales of the property securing the six notes at issue? The parties agree that if there were such foreclosure sales, FDIC would be precluded from suing on the notes because after a foreclosure sale a creditor can sue only for a deficiency judgment; furthermore, since here the foreclosure sales had not been confirmed under § 67–1503, suit for a deficiency judgment would also be barred.

■ FDIC asserts that the foreclosure sales were void. To review this claim, we must decide whether the superior court's denial of confirmation is in effect equivalent to setting aside the sale, despite the procedural differences from a suit in equity

---

**6.** Although this would have rendered the order invalid if appealed (*see Pruitt v. First National Bank of Habersham County,* 142 Ga.App. 100, 235 S.E.2d 617 (1977)), it was not appealed, nor does FDIC collaterally attack the order.

**7.** This determination by the district court was necessary because Jerry Dye also asserted several counterclaims. The district court denied FDIC's motion for summary judgment on the counterclaims; that denial is reviewed in a companion case, *FDIC v. Dye,* 642 F.2d 833 (5th Cir. 1981).

**8.** *National Screen* holds, however, that the denial of a motion for summary judgment is a discretionary decision.

to void a sale.[9] Georgia law, by establishing different tests for confirmation and for voiding sales, indicates the two are not equivalent. Under *Ga.Code Ann.* § 67–1504, the applicant for confirmation must introduce evidence sufficient to show that the price equaled the property's value. By contrast, in an action to set aside a sale the price brought serves as prima facie evidence of the value of the property[10] (*see Fleming v. Federal Land Bank of Columbia*, 144 Ga.App. 371, 241 S.E.2d 271 (1977); *see also Giordano v. Stubbs*, 228 Ga. 75, 184 S.E.2d 165 (1971)[11]); the burden is on the one attacking the sale to rebut the prima facie showing by proving that the price was "grossly inadequate and the sale ... [was] accompanied by either fraud, mistake, misapprehension, surprise or other circumstances which might authorize a finding that such circumstances contributed to bringing about the inadequacy of price."[12] *Giordano*, at 79, 184 S.E.2d 165.

Further support for the conclusion that a denial of confirmation is not equivalent to setting aside a sale can be derived from *Ga.Code Ann.* § 67–1505 which provides that the court denying confirmation may, for "good cause," order resale. Ordering resale would be unnecessary if the denial of confirmation set aside the sale, thus revesting title in the debtor, because then the creditor could, if the debtor's default persisted, foreclosure and resell without a court order.[13] *See Weems v. McCloud*, 619 F.2d 1081, 1086–87 (5th Cir. 1980) (dicta intimating that in confirmation proceeding title is only affected where the court orders resale); *see also Wall v. Federal Land Bank of Columbia*, 240 Ga. 236, 240 S.E.2d 76 (1977).

FDIC next argues that if a sale has defects which would justify a court in decreeing it void, either party, even absent a judicial proceeding, may disregard the sale as void. *See Holbrook v. Stewart*, 55 Ga. App. 720, 191 S.E. 165 (1937); *see also Cul-*

---

**9.** While a petition to set aside a sale is a suit in equity, a confirmation proceeding is an "application" limited in scope and requiring specified procedures. *See generally* Aiken & Ward, *Foreclosures and Confirmation of Sale* 105–106 (1979) and authorities cited therein.

**10.** We need not discuss the nature or existence of any further differences.

**11.** There is dicta in several confirmation cases that implies that a denial of confirmation is equivalent to setting aside the sale. *See, e. g., Shantha v. West Georgia National Bank*, 145 Ga.App. 712, 244 S.E.2d 643 (1978); *Jonesboro Investment Trust Assoc. v. Donnelly*, 141 Ga. App. 780, 234 S.E.2d 349 (1977). This dicta should be disregarded. First, as noted, the test applied in these cases is more liberal than the test required under *Giordano* for setting aside a sale, indicating that voiding the sale is not a possibility in confirmation cases (it would make little sense to apply a different test for setting aside a sale in a confirmation proceeding than in a suit in equity). Secondly, the dissent in *Giordano* clearly says that denial of confirmation and setting aside a sale are different and governed by different tests. Third, as *Fleming* observes, the two tests were meant to be different. Section 67–1503, which does not purport to affect the validity of sales but just to prevent deficiency judgments in addition to unfair sales, was intended to supplement the debt-

or's right to set aside the sale. Section 67–1503 would serve little purpose if the debtor had to meet the same burden he would to set aside the sale. Finally, as discussed *infra, Ga. Code Ann.* § 67–1505, the resale provision, would make little sense if denial of confirmation were the equivalent of setting aside a sale.

**12.** Because of the difference in tests, the superior court's unexplained denial of confirmation has *no significance* with respect to the validity of the sale. The denial could have been based on the failure of FDIC to produce sufficient independent evidence of the value of the property. The court may not have even considered whether appellants produced sufficient rebuttal evidence under the *Giordano* test.

**13.** An order to resell under § 67–1505, which is technically an order to set aside a sale *and* an order to resell, may be appropriate where the court denies confirmation of a sale for an inadequate price, but finds that the creditor acted in good faith in conducting the sale. *See Weems v. McCloud*, 619 F.2d 1081 (5th Cir. 1980) and authorities cited therein. This different test for setting aside a sale is explainable by the fact that it is the other party, the creditor, who seeks to void a sale where confirmation is denied (the sale, if not voided, would prevent recovery of the full debt through a deficiency judgment); to establish the equity of the creditor's position requires a different showing.

*ver v. Lambert*, 132 Ga. 296, 64 S.E. 82 (1909). Thus, if these sales had defects which would render them void, FDIC contends that it would be justified in disregarding them and suing on the notes. We need not decide the validity of such a broad proposition, for in the case before us there has been no showing that the sales would be set aside as void in a proper judicial proceeding. The only irregularity alleged is designating FDIC as receiver rather than as corporation in the advertisement. There is no showing that any of the prices were "grossly inadequate" or that the defect, which is insufficient in and of itself to void the sale, had any impermissible effects under *Giordano*. Thus, FDIC has not shown that under this theory the sales were void.

■ We are persuaded by FDIC's argument, however, that even if the sales were not void, they were never consummated: no deed was transferred and no consideration passed. Georgia law treats the high bid at a foreclosure sale as forming a contract: the bidder contracts with the debtor to purchase the property at the bid price. *See Moody v. Mendenhall*, 238 Ga. 689, 234 S.E.2d 905 (1977) (suit by debtor to enforce specific performance by bidder). Until the deed is transferred the sale itself has not occurred; there is only a contract to buy and sell.

■ There is no Georgia law on whether a contract to buy and sell is to be considered a "foreclosure sale" for the purpose of prohibiting the creditor from suing for anything but a deficiency judgment (which, as noted, is only permissible if the sale is confirmed). However, analogous

Georgia case law makes clear the contract is not a foreclosure sale for this purpose. In the converse situation, a creditor can foreclose on property after suing on the note. *See Norwood & Co. v. First Federal Savings & Loan Association*, 99 Ga.App. 692, 109 S.E.2d 844 (1959); *see also Oliver v. Slack*, 192 Ga. 7, 14 S.E.2d 593 (1941); *Brown v. Georgia State Bank*, 141 Ga.App. 570, 234 S.E.2d 151 (1977). His right to foreclose is only barred by the actual satisfaction of the underlying debt; even reducing a note to judgment without execution is not such satisfaction as would prevent foreclosure. *See Norwood*. By analogy, we conclude that to constitute a foreclosure sale which would preclude a judgment for the full amount of the note, the proceeds of the sale must have been transferred from the bidder to the creditor. The next question is whether this transfer occurred in the case before us. Where the bidder and creditor are the same entity, there must be an objective standard to determine when or if the transfer has occurred. The parties direct us to no such standard. However, where the deeds have not been delivered nor have the notes been marked paid in full,[14] it is clear that the proceeds of sale have not been transferred in the cases before us. Thus, there were no valid foreclosure sales to prevent FDIC from suing for the previously outstanding balance of the notes.

### III.

The next issue is whether the transfer of the notes from FDIC as receiver to FDIC as corporation was void under Georgia law, as impermissible self-dealing by a receiver.[15] If so, FDIC as corporation would not be the

---

14. These are the only two realistic possibilities. It would be inappropriate to say the proceeds were automatically transferred when bid to the entity as creditor, for that would force the entity to sue for specific performance of the contract rather than sue on the note if it preferred the latter. In the converse situation, Georgia does not compel the debtor to execute on a judgment for the note instead of foreclosing. *See Norwood.*

15. This question involves numerous issues which are not adequately briefed. However, we need not decide all of them to dispose of

appellants' argument. We do not decide whether state law could ever prohibit a sale by FDIC as receiver to FDIC as corporation. *Compare FDIC v. The Fidelity and Deposit Co. of Md.*, No. C–77–1762–A (N.D.Ga.1978) (state self-dealing law preempted) with *FDIC v. American Bank*, 558 F.2d 711 (4th Cir. 1977) (interprets 12 U.S.C. § 1823(d) to require state approval of such sale). We also need not decide the *res judicata* or collateral estoppel effect of the court approval of the sale. Further questions which we do not reach are discussed *infra*.

proper party to maintain an action on the notes.

■ *Associates Financial Services Co., Inc. v. Johnson*, 128 Ga.App. 712, 197 S.E.2d 764 (1973), in discussing sheriff's sales, articulates Georgia law regarding a receiver selling to itself. Such sales "are voidable at the election of anyone having a beneficial interest in the property so sold and purchased." *Associates* at 714, 197 S.E.2d 764. Larry Dye does not show that he has a beneficial interest in the notes sold. Jerry Dye, on the other hand, maintains he was a stockholder of FABT. We assume without deciding that this is a sufficient beneficial interest. We also assume without deciding that Jerry Dye properly presented this issue in the district court.[16] We hold that Jerry Dye's argument fails on the basis of an analogous Georgia case which rejected, on equitable grounds, a petition to vacate a sale by a receiver:

> One who had full knowledge of the pendency of a case in which he had a direct pecuniary interest, and neither sought to become a party thereto nor made any effort to intervene therein, so as to protect his rights, can not, after the rendition of a judgment in favor of [another party] in such suit, maintain an equitable petition to set such judgment aside or restrain its enforcement.

*Hurt Bldg., Inc. v. Atlanta Trust Co.*, 181 Ga. 274, 287, 182 S.E. 187 (1935). In the judicial proceeding in which FDIC obtained approval of the sale to itself, other shareholders/directors (Jerry Dye was also a director of FABT) filed motions to set aside the sale. *See In re First Augusta Bank & Trust Co.*, No. 5814–C (Super.Ct. Nov. 3, 1978), *aff'd, Cipolla v. FDIC*, 244 Ga. 444, 260 S.E.2d 482 (1979). Under *Hurt Building* Jerry Dye's failure to do so precludes any subsequent attack by him on the sale under Georgia law.[17]

## IV.

The Jerry Dye case involves an additional issue. On September 21, 1977, Jerry Dye and two of his former law partners sold the property securing the note on which Jerry Dye was subsequently sued under Count 4 (the partners were also makers of the note). They allegedly requested that FDIC execute a "cancellation of security deed," so they could give clear title to the purchaser. FDIC executed such a cancellation on November 8; the relevant language was:

> Whereas, the indebtedness has been paid in full but the security deed has been misplaced, and
>
> Whereas, it is in order to mark same satisfied of record.

According to FDIC, both parties intended that the amount of the note over the proceeds ($1,432, the amount sued for on this particular note) would still be owed to FDIC; in fact, Jerry Dye allegedly contacted appellee after the sale to obtain a recalculation of the outstanding debt. The sales proceeds, $10,524.54, were transferred to appellee. The note sued on in Count 4 was not marked paid in full.

■ Jerry Dye contends that the "cancellation of security deed" was a release of the debt sued on under Count 4. Such an argument is contrary to the language of the instrument which does not purport to release the debt, but to mark its previous satisfaction. Jerry Dye also seems to argue, in the alternative, that the instrument is sufficient *evidence* that the debt has been paid to create a genuine issue of material fact. FDIC counters by pointing to its uncontradicted affidavit and deposition explaining, as noted, that the cancellation was simply FDIC's response to Jerry Dye's request that the security deed be cancelled to allow him to sell the property unencumbered. Resolving all reasonable doubts against the movant, FDIC, we conclude that there is a genuine conflict between

---

16. Jerry Dye simply asserted in an answer that the sale was void. In a wholly separate counterclaim, he alleged he was a stockholder of FABT. *Cf. Fidelity* (requiring a specific allegation of a beneficial interest).

17. As he was a shareholder, director, and debtor, we must conclude that Jerry Dye had full knowledge of the sale in the absence of any showing he did not.

FDIC's testimonial evidence and Jerry Dye's documentary evidence, especially since the cancellation was dated two months *after* the sale by Jerry Dye and his partners. Thus, the district court erred in granting summary judgment on Count 4.

### Conclusion

We AFFIRM the grant of summary judgment for FDIC in both cases, with the exception of Count 4 of FDIC's action against Jerry Dye, No. 79–1513, which we REVERSE and REMAND for further proceedings.