In Re George S. GAYLE, Jr. and Jane Colley Gayle, Debtors.

**FARM CREDIT BANK OF TEXAS**

v.

George S. GAYLE, Jr. and Jane Colley Gayle.

Bankruptcy No. 94–48313–H4–11. Adv. No. 95–4321.

United States Bankruptcy Court, S.D. Texas, Houston Division.

Dec. 28, 1995.

Marc Magids, Houston, TX, for debtor.

Michael S. Beckwith, Michael S. Beckwith, P.C., Houston, TX, for Curtis J. Domingue, Jr., Trustee.

Jeffrey E. Bohm, McGinnis, Lochridge & Kilgore, L.L.P., Austin, TX, for The Farm Credit Bank of Texas.

## MEMORANDUM OPINION

WILLIAM R. GREENDYKE, Bankruptcy Judge.

On May 12, 1995 Farm Credit Bank of Texas (the "Bank") instituted this adversary proceeding to obtain a declaratory judgment that its foreclosure on 327.999 acres in Fort Bend County, Texas was valid. After the Gayles ("Debtors") counterclaimed, the Bank filed a motion for summary judgment on

August 17, 1995 in favor of its request for declaratory judgment and against Debtors' counterclaims. The Bank's motion for summary judgment has been previously granted by separate form of Order insofar as it pertains to the Bank's claims for declaratory judgment and against Debtors' counterclaim. This memorandum opinion constitutes the Court's findings and conclusions in connection with the Order granting the Bank's Motion for Summary Judgment.

### I. *FACTUAL BACKGROUND*

George S. and Jane Colley Gayle ("Debtors") executed a note and deed of trust in favor of Farm Credit Bank of Texas (the "Bank") for real property financing in the amount of $512,000.00 on August 20, 1981. The note was secured by a deed of trust encumbering 327.999 acres in Fort Bend County, Texas. On or about October, 1992, Debtors defaulted on the note and the Bank proceeded to nonjudicially foreclose against the property.

Debtors sued to enjoin the nonjudicial foreclosure in state court and the Bank removed the action to the U.S. District Court for the Southern District of Texas. The Bank also filed a counterclaim on the debt, and on November 3, 1993, a judgment was entered on the promissory note in favor of the Bank for $601,795.80 and $6,200.00 in attorneys' fees.

On December 5, 1994 Debtors filed a Chapter 11 petition in this Court. The Bank secured an Order granting its Motion for Relief from the Automatic Stay on April 7, 1995. Consequently, foreclosure occurred on May 2, 1995.

The Bank instituted this adversary for declaratory judgment after the foreclosure because of a letter received by the Bank from Debtors' attorney stating that the Bank had wrongfully foreclosed and should restore title in the Debtors. The Bank sought a declaratory judgment that the foreclosure was valid, that the Trustee's sale under the deed of trust was proper, that Debtors hold no further interest in the property, and that the Bank, having purchased the property at the sale, holds valid legal title.

Debtors filed an amended counterclaim alleging wrongful foreclosure.[1] On August 17,

---

1. In the original counterclaim, Debtors also as-     serted a cause of action for usury. The amended

1995 the Bank filed a Motion for Summary Judgment in favor of its request for declaratory judgment and against Debtors' counterclaim.

## II. NONJUDICIAL FORECLOSURE AFTER JUDGMENT ON A NOTE

In its Motion for Summary Judgment, the Bank argues that it had the right to nonjudicially foreclose on its deed of trust lien and that its state law contractual rights were not erased by the Bank's earlier judgment on the promissory note in the Federal District Court lawsuit. Debtors, however, have argued that the Bank's right to nonjudicially foreclose on the property was eradicated by its earlier judgment on the promissory note because of either an election of remedies or the doctrine of merger.

### A. ELECTION OF REMEDIES

■ The basic premise of the doctrine of election of remedies is that a claimant is prohibited from choosing between two or more inconsistent, but coexistent modes of procedure and relief allowed by law on the same state of facts. *Pansegrau v. National Union Fire Insurance Co. of Pittsburgh, PA,* 23 F.3d 960, 964 (5th Cir.1994); *Ditmore v. Fairfield Industries,* 855 F.Supp. 187, 191 (S.D.Tex.1994) (*election of remedies is a bar to the relief sought if it is affirmatively shown that the plaintiff has successfully exercised an informed choice between two or more remedies which are so inconsistent as to constitute manifest injustice* ); *Seamans Oil Co. v. Guy,* 276 S.W. 424, 426 (Tex.1925); *Thomas v. Thomas,* 902 S.W.2d 621, 624 (Tex.App.—Austin 1995, *rehearing denied* ). There is no election, that is, no inconsistency in choices when one first pursues a right or

remedy which proves unfounded and then pursues one that is allowed. *Pansegrau,* 23 F.3d at 964; *citing Plate & Platter, Inc. v. Wolf,* 780 S.W.2d 453, 456 (Tex.App.—Dallas 1989, *writ denied* ).

■ An election of remedies must be made between judicial foreclosure and nonjudicial foreclosure. *Thurman v. Federal Deposit Insurance Corporation,* 889 F.2d 1441, 1445 (5th Cir.1989, *rehearing denied* 1990); *Vance v. Wilson,* 382 S.W.2d 107, 108 (Tex.1964); *Coffman v. Brannen,* 50 S.W.2d 913, 915 (Tex.Civ.App.—Amarillo 1932, *no writ* ); *Terry v. Witherspoon,* 255 S.W. 471, 477 (Tex.Civ.App.—Amarillo 1923, *rehearing denied* ).[2] Judicial foreclosure and nonjudicial foreclosure cannot be prosecuted concurrently; and the institution of judicial foreclosure constitutes an election of remedies which precludes the resort to nonjudicial foreclosure. *Coffman v. Brannen,* 50 S.W.2d at 915.

The law pertaining to the right to nonjudicially foreclose on *personal property* after a judgment on a promissory note has been rendered is well settled. After a debtor defaults on a secured personal property note, the creditor may exercise any right provided in the security agreement (with restrictions), reduce its claim to judgment, foreclose, or otherwise enforce the security interest by any available judicial procedure. TEX.BUS. & COM.CODE ANN. § 9.501(a) (Vernon 1991). These rights and remedies are *cumulative. Id.* (*emphasis added*).

■ As a result, obtaining a judgment on a promissory note secured by personalty does not preclude the creditor from exercising its right to nonjudicially foreclose on the property because the secured creditor can exercise cumulative remedies until the debt

---

counterclaim, filed after the Bank's Motion for Summary Judgment, only alleged wrongful foreclosure.

**2.** An important question in this case is whether the Bank's counterclaim in the District Court action sought the remedy of judicial foreclosure. The Bank's counterclaim in the District Court (docket # 4 of Case No. 93–1086, of which I take judicial notice) did not request judicial foreclosure. The pleading states that the suit was solely on the note.

However, in the event the Bank had requested judicial foreclosure in the prior suit, then it would be precluded from holding a subsequent nonjudicial foreclosure because there would have been a distinct election of remedies between judicial and nonjudicial foreclosure. This opinion is based on the finding that the Bank did not request judicial foreclosure in the District Court counterclaim.

is repaid. CLARK, THE LAW OF SECURED TRANSACTIONS §§ 4–26 & 4–27 (2nd ed. 1988).

However, the law with regard to nonjudicial foreclosure on *real property* after a judgment on the promissory note has been rendered is not as well defined. In *Crutcher v. Aetna Life Insurance,* it was held that

> a mortgagee, ... is entitled to pursue concurrently the remedies under the loan guarantee and the mortgage to obtain satisfaction. Merely obtaining a judgment against another party—when such judgment remains uncollected—is not a satisfaction nor does it give rise to the bar of the election of remedies.

*Crutcher v. Aetna Life Insurance,* 746 F.2d 1076, 1080–81 (5th Cir.1984).

In *Crutcher,* the guarantor of a debt argued that because the creditor's claims against him were reduced to a judgment, the doctrine of election of remedies precluded the creditor from later proceeding against the land as collateral. *Crutcher,* 746 F.2d at 1080. The Fifth Circuit declined to accept this argument. *Id.*

In *Federal Deposit Insurance Corp. v. Dye,* the Fifth Circuit also stated that according to Georgia law:

> [A] creditor can foreclose on property after suing on the note ... His right to foreclose is only barred by the actual satisfaction of the underlying debt; even reducing a note to judgment without execution is not such satisfaction as would prevent foreclosure ... By analogy, we conclude that to constitute a foreclosure sale which would preclude a judgment for the full amount of the note, the proceeds of the sale must have been transferred from the bidder to the creditor.

*Federal Deposit Insurance Corp. v. Dye,* 642 F.2d 837, 843 (5th Cir.1981), *citing Norwood & Co. v. First Federal Savings & Loan Association,* 99 Ga.App. 692, 109 S.E.2d 844 (1959); *Oliver v. Slack,* 192 Ga. 7, 14 S.E.2d 593 (1941); *Brown v. Georgia State Bank,* 141 Ga.App. 570, 234 S.E.2d 151 (1977).

The *Dye* case involved a suit brought by the FDIC against the makers and guarantors of notes which it sold to itself following its appointment as receiver of a creditor bank. *Federal Deposit Insurance Corp. v. Dye,* 642 F.2d at 839. The FDIC sued Jerry Dye and Larry Dye for the outstanding balances on the notes after the FDIC had made three invalid attempts to foreclose on the real property pledged as security. *Id.* at 840–841.[3]

The Court in *Dye* noted that in the event any of the three foreclosure attempts by the FDIC were valid, the FDIC would be precluded from suing on the notes because after foreclosure, a creditor can only sue for a deficiency judgment. *Dye,* 642 F.2d at 841.

No Texas state court has addressed the issue of whether a creditor can nonjudicially foreclose on real property collateral after obtaining a personal judgment against a debtor on a note. However, peripheral state court decisions, when read collectively, indicate that such a remedy is available after an unsatisfied judgment on a note.

In *French v. May,* the Texas Court of Appeals stated it is a well settled rule that nonjudicial foreclosure by a mortgagee is allowed during a *pending* suit on the note so long as foreclosure of the lien is not sought in the pending action. *French v. May,* 484 S.W.2d 420, 428 (Tex.App.—Corpus Christi 1972, *writ ref. n.r.e.*), *citing Natali v. Witthaus,* 135 S.W.2d 969 (Tex.1940, *opinion adopted*); *Babington v. Gray,* 71 S.W.2d 293 (Tex.Civ.App.—Austin 1934, *no writ*) (*emphasis added*).[4] In *French,* the appellant contended that a foreclosure sale by the trustee was void because it occurred during

---

3. First, the FDIC published foreclosure notices in January, 1978, advertising a February sale. At the sale, the FDIC was the highest bidder for each piece of property. However, after foreclosure, the FDIC learned that the advertisement was defective. Thus, new advertisements for a March sale were published, but they were also incorrect. For a third time, advertisement began in April. However, this sale was cancelled as a result of negotiations with Jerry Dye, who was attempting to sell the property at a higher price than what the FDIC was willing to bid upon foreclosure. *Dye,* 642 F.2d at 840–841.

4. In the instant case, the issue is whether a mortgagee can foreclose *after* the judgment in a suit on the note has been rendered, a situation different from what the *French* court had to decide.

the pendency of a suit on the note. *Id.* at 424.

Furthermore, in *Middleton v. Nibling,* the Court held that the holder of a note and security interest may bring suit and obtain judgment on the note without losing the right to bring a suit for *judicial* foreclosure on the collateral if no foreclosure was requested in the initial suit on the note. *Middleton v. Nibling,* 142 S.W. 968, 969 (Tex.Civ.App.— Austin 1911, *no writ*) (*citations omitted*) (*emphasis added*).[5]

■ A basic premise of Texas law is that the right to recover a personal judgment for a debt secured by a lien on land and the right to foreclose on a lien are severable. *Carter v. Gray,* 125 Tex. 219, 81 S.W.2d 647, 648 (1935). Furthermore, a plaintiff may elect to seek a personal judgment without foreclosing the lien, and even without waiver of it. *Id.*

The most factually on point case to the instant matter is *Szego v. Kingsley Anyanwutaku,* 651 A.2d 315 (D.C.App.1994). In *Szego,* a creditor held a promissory note secured by a deed of trust on two parcels of property. The creditor obtained a judgment on the note and later began to exercise its power to nonjudicially foreclose on the properties. The debtor obtained a permanent injunction prohibiting the foreclosure sale. *Szego,* 651 A.2d at 315–316.

The District of Columbia Court of Appeals framed the issue as whether a party who obtains a money judgment against the makers of the note has made an election of remedies and is precluded for that reason or under the principles of res judicata or collateral estoppel from pursuing the security by way of foreclosure. *Szego,* 651 A.2d at 316.

The *Szego* Court decided that the creditor was not precluded from pursuing the security by way of foreclosure. Citing 55 Am.Jur.2d *Mortgages* §§ 541 & 543 (1971), the Court states:

> [T]he general rule, in absence of a statute to the contrary, is that a creditor whose debt is secured by mortgage may pursue his remedy in personam for the debt, or his remedy in rem to subject the mortgaged property to its payment . . .
>
> [U]ntil the mortgage debt is actually satisfied, the recovery of a judgment on the obligation secured by a mortgage, without the foreclosure of the mortgage, although merging the debt in the judgment, has no effect upon the mortgage or its lien, does not merge it, and does not preclude its foreclosure in a subsequent suit instituted for that purpose, or the exercise of the power of sale contained in the mortgage or deed of trust . . .

*Szego,* 651 A.2d at 316.

The Court in *Szego* purported to follow the common law rule that a party who sues a maker or guarantor on a note is not precluded under the doctrines of election of remedies or res judicata from pursuing the security by way of foreclosure, regardless of which action is pursued first. The two remedies are independent and do not conflict with one another. *Szego,* 651 A.2d at 317. The Court also noted that other jurisdictions which have considered the issue and have arrived at the same conclusion include Alaska, Delaware, Florida, Georgia, Illinois, and Missouri. *Id.* However, the Court noted that this common law rule may be modified by state statute, as is the case in both California and New York. *Id.* at n. 4.[6] Texas, however, has no such

---

5. *Middleton* involved a suit brought against the makers of the note for the unpaid balance and for foreclosure of the real property lien. *Middleton v. Nibling,* 142 S.W. 968, 969 (Tex.Civ.App.— Austin 1911, *no writ*). The Court held that the prior suit for foreclosure and against the makers for the unpaid balance of the note did not preclude a subsequent suit against other obligors. *Id.*

6. California has adopted a single action rule which precludes a mortgagee from suing a mortgagor on a note and subsequently foreclosing on the real property collateral. *Madigan v. Potrans*

*International,* 122 B.R. 103, 104 (9th Cir. BAP 1991), *citing* Cal.Code Civ.Proc. § 726(a).

New York also has a similar statute which requires that a creditor who has received a judgment on a note may not proceed against the collateral without court order. *Contemporary Mortgage Bankers v. High Peaks Base Camp,* 156 B.R. 890, 894 (Bankr.N.D.New York 1993); *citing* N.Y.Real Prop.Acts Law § 1301 (McKinney 1979). New York courts have interpreted the statute to require a creditor to elect to sue on the note or to foreclose on the property, but not both. *Id.* at 894–95.

statute which dictates the remedies of a creditor/mortgagee.

In the instant case, the deed of trust between the parties submitted as part of the summary judgment proof does not contain any contractual provisions which restrict the Bank's ability to pursue all remedies available under law. Upon consideration of the facts, the controlling precedent articulated in *Crutcher* and *French* is instructive in clarifying that the doctrine of election of remedies is not so all-encompassing as to prevent a mortgagee from concurrently pursuing a suit on the note and foreclosing on a mortgage.

Consequently, the *Crutcher, French,* and *Dye* decisions compel the conclusion in the instant case that the Bank has not sought a double recovery nor attempted to accomplish a result forbidden by law when it obtained a judgment on a note and then later proceeded to foreclose on the 327.999 acres.[7] This is consistent with the holding of the Court in *Szego.*

Moreover, if the doctrine of election of remedies prevented a mortgagee from foreclosing on its real property lien after a suit on the note proved uncollectible, a mortgagee's victory in such suit would be nearly meaningless. Debtors would have no incentive to satisfy a mortgagee's judgment on a note knowing that they are insulated from a later foreclosure. In addition, the fundamental notion that a prevailing party in a suit may pursue execution of an unsatisfied judgment would be undermined.

Furthermore, a contrary rule of law would force mortgagees to always include alternative requests for judicial foreclosure in their actions brought on a promissory note in order to avoid preclusion of nonjudicial foreclosure at a later date. This would result in a myriad of requests for judicial foreclosure unnecessarily brought absent a clear legal right to nonjudicially foreclose on a real property lien after obtaining a judgment on a note.

### B. *DOCTRINE OF MERGER*

■ Debtors have also asserted that the Bank's ability to nonjudicially foreclose on

the 327.999 acres was merged into the prior judgment on the note. The doctrine of merger states that "[w]hen a valid and final judgment is rendered in favor of the plaintiff ... the plaintiff cannot thereafter maintain an action on the original claim or any part thereof, although he may be able to maintain an action upon the judgment ..." RESTATEMENT (SECOND) OF JUDGMENTS § 18 (1982). *See also Kulow v. Farmers Royalty Holding Co.,* 190 S.W.2d 60, 61 (Tex.1945) (*cause of action reduced to judgment is merged into the decree* ).

In the case of a defendant making a counterclaim, the defendant is treated as a plaintiff for purposes of application of the doctrine of merger to that counterclaim. RESTATEMENT (SECOND) OF JUDGMENTS § 21. The Restatement defines a "claim" as including "all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the transaction arose." *Id.* § 24. This is also known as the "transactional test" for claim preclusion for purposes of res judicata analysis.

■ However, as a general rule, a lien securing a debt which becomes merged in a judgment is not affected by such merger. 46 AM.JUR.2d *Judgments* § 513 (1994). In addition,

> In the absence of a statutory regulation otherwise, on default of the mortgagor, the mortgagee may ... sue on the debt or obligation secured ... or he may proceed to foreclose his mortgage, and, in so far as these remedies coexist, he may pursue any or all of them concurrently or successively as he may deem proper, as they are independent, separate, and distinct remedies; and generally neither is pleadable in abatement of the other.

59 C.J.S., *Mortgages* § 485 (*citations omitted* ).

Many Texas cases stand for the proposition that a note and a lien are two separate and severable rights held by a creditor. *Kempner v. Comer,* 11 S.W. 194, 196 (Tex.

---

**7.** As stated in note 2, *supra,* this conclusion assumes that the Bank did not request judicial

foreclosure in the original suit brought by the Debtors.

1889) ("*A suit may be maintained on a note secured by a lien without enforcement of the lien, and after judgment another suit can be brought to foreclose the lien at anytime before the debt is barred by limitation.*"); *Jordan v. Massey*, 134 S.W. 804, 806 (Tex.Civ. App.1911, *rehearing denied* ) ("*It is now well settled that the right to recover a personal judgment for a debt secured by a lien on real estate and the right to have foreclosure of that lien are severable, and may be made the subject-matter of two distinct causes of action.*"); *Carter v. Gray*, 81 S.W.2d 647, 648 (Tex.1935) ("*It is so well settled as not to be controverted that the right to recover a personal judgment for a debt secured by a lien on land and the right to have foreclosure of lien are severable, and a plaintiff may elect to seek personal judgment without foreclosing the lien, and even without waiver of the lien.*"); *Lazidis v. Goidl*, 564 S.W.2d 453, 456 (Tex.Civ.App.—Dallas 1978, *no writ* ) ("*A holder of a secured note may sue, as here, on the note without resorting to the security ... The mere fact that [the lienholder/noteholder] may have the right to rescind under a vendor's lien is not tantamount to an election to exercise that right.*"); *Swiss Ave. Bank v. Slivka*, 724 S.W.2d 394, 396–97 (Tex. App.—Dallas 1986, *rehearing denied* ).

▪ Another facet, or exception, to the doctrine of merger is that it is not to be carried any further than justice requires. *Farmers Royalty Holding Co. v. Kulow*, 186 S.W.2d 318, 321 (Tex.Civ.App.—Galveston 1945), *aff'd sub nom.*, 144 Tex. 312, 190 S.W.2d 60 (1945). In other words, the judgment does not deprive the creditor of the right to foreclose on a lien or security held for a debt. *Id.* at 321.

▪ In addition, the doctrine of merger does not prevent looking behind the judgment into the nature of the underlying causes of action. *Farmers Royalty Holding Co.*, 186 S.W.2d at 321. This is relevant if the prevailing party was contractually entitled to certain rights or exemptions which may also be appropriate under the judgment. *Id.* (*citation omitted* ).

From a common sense standpoint, much of the analysis concerning the doctrine of election of remedies stated above is also relevant

in addressing Debtors' argument regarding the doctrine of merger. If the ability to pursue nonjudicial foreclosure after a suit on a note remains unsatisfied, mortgagees would be immobilized from collecting unpaid debts if the doctrine of merger prevented a subsequent non-judicial foreclosure. More importantly, the intrinsic rationale for securing a mortgage with the real property as collateral would be frustrated.

Debtors have also argued that the Fifth Circuit and Texas Supreme Court have abolished the specific principles concerning the doctrine of merger previously enunciated in the *Kulow* case. *Kulow v. Farmers Royalty Holding Co.*, 190 S.W.2d at 61. Debtors claim that the "obsolete" construction of the doctrine of merger formulated in *Kulow* allows claims not expressly in issue in a lawsuit to be subsequently litigated. Debtors cite *Southmark Properties v. The Charles House Corp.*, 742 F.2d 862, 870 (5th Cir.1984) and *Barr v. Resolution Trust Corporation*, 837 S.W.2d 627, 629–630 (Tex.1992) for this position.

Debtors have misconstrued the statements of law expressed in *Southmark* and *Barr*. In *Southmark*, the Court was analyzing whether or not two or more law suits involved the same claim under the transactional test. *Southmark*, 742 F.2d at 862. Debtors argue that the *Southmark* decision stands for the proposition that all claims and *all remedies* arising from a transaction which can be raised in one suit must be brought in one suit. However, a review of the Fifth Circuit's opinion reveals that the actual holding was that a final judgment extinguishes a plaintiff's claim under the doctrine of merger and all rights of the plaintiff *to remedies* arising out of a transaction. *Id., n. 12 (emphasis added), citing* RESTATEMENT (SECOND) OF JUDGMENTS § 24. The Restatement also notes, however, that all advantages to which the plaintiff is entitled are preserved despite the judgment. Consequently, if a creditor holds a lien on property of a debtor and obtains a judgment against the debtor, the creditor does not thereby lose the benefit of the lien. RESTATEMENT (SECOND) OF JUDGMENTS § 18, *cmt. g.* In *Barr*, the Texas Supreme Court was utilizing the transaction-

al test to determine if res judicata barred a bank from suing a defendant in his partnership capacity after successfully litigating their claim against him in his individual/guarantor capacity. *Barr*, 837 S.W.2d at 631.

The transactional test discussed in the foregoing cases is a broad principle utilized to ascertain what constitutes a single cause of action for purposes of merger or bar. *Kulow* and its progeny stand for the more narrow notion that a judgment on an underlying debt does not destroy a lienor's right to nonjudicial foreclosure since a note and a lien are two separate and severable contractual rights held by a mortgagee. *See Kulow*, 190 S.W.2d at 61; *See Also, Carter*, 81 S.W.2d at 647; *Lazidis*, 564 S.W.2d at 456; *Lodal*, 583 S.W.2d at 654–55; *Swiss Ave. Bank*, 724 S.W.2d at 396–97.

Therefore, the transactional test described in *Southmark* and *Barr* does not overturn, but expressly reaffirms the right of a mortgagee to pursue nonjudicial foreclosure after a suit on the debt remains unsatisfied. More importantly, the policies which support these two congruent rules of law further demonstrate the fallacy behind Debtors argument regarding the doctrine of merger. The policy served by allowing a mortgagee to nonjudicially foreclose on its lien after an unsatisfied judgment on the note is to allow the mortgagee to seek cumulative, consistent remedies until the debt is paid. The policy supporting the transactional test for claim preclusion, or res judicata, is to prevent parceled litigation, encourage parties to bring litigation to an end, maintain stability of judicial decisions, promote judicial economy, and prevent double recoveries. *See Barr*, 837 S.W.2d at 629. In short, the two policies and the two rules of law which corroborate them are exceedingly complementary.

In the instant case, subsequent nonjudicial foreclosure is not part of the initial "claim" brought in the suit on the note. This result would be different, however, if judicial foreclosure had been requested in conjunction with the suit on the note, which would then bar a subsequent right to nonjudicial foreclosure.

### III. CONCLUSION

The doctrine of election of remedies does not prevent a mortgagee from pursuing foreclosure of its real property lien after obtaining a judgment on the note which proves uncollectible. Multiple consistent remedies may be pursued until a debtor's obligation to a mortgagee is actually satisfied. There is no inaccordant election of remedies when a mortgagee proceeds to nonjudicially foreclose its lien after a successful suit on the note proves uncollectible.

Similarly, the doctrine of merger also does not prevent a mortgagee from pursuing foreclosure of its real property lien after obtaining a judgment on the note which remains unsatisfied. The notion that a final judgment prevents a successful plaintiff from thereafter maintaining an action on the original claim or any part thereof does not vitiate the right to nonjudicially foreclose after a successful suit on the note. The doctrine of merger maintains that a successful plaintiff may pursue an action on the judgment after a suit. Nonjudicial foreclosure after an unsatisfied judgment on the note is merely an application of this aspect of the doctrine of merger.

In summary, the Bank is entitled to summary judgment on all of its requests for declaratory relief, including that the foreclosure on the 327.999 acres was valid, the Trustee's sale under the deed of trust was proper, and that Debtors hold no further interest in the property. Debtors' arguments that the foreclosure was invalid due to either an election of remedies or the doctrine of merger are without merit. The Bank is also entitled to summary judgment on Debtors' counterclaim for wrongful foreclosure. The only potential factual issue remaining concerns the request for attorneys' fees by the Bank's counsel. This issue shall be severed and determined separately from the substantive matters decided herein.